DAVID L. HUNTER *vs.* FRANCIS E. HEATH *et al.*

Waldo.   Decided October 25, 1877.

*Real action.   Estoppel.   Trial.   New trial.*

In a real action the demandant can recover only on the strength of his own title and not on the weakness of that of the tenant.

The declarations of a party adverse to his own interest, though entitled to grave consideration, do not constitute an estoppel.   They may be strong evidence of a boundary, but do not pass a title. ·

Where an instruction of the presiding justice, though correctly stating the law, is not sufficiently full, an exception thereto will not be sustained, unless further instruction is asked for and refused.

The question as to the actual place of the division line on the face of the earth was referred.   The demandant, after one of the referees had partially surveyed a line, proposed to agree upon the line as claimed by the tenants, and to pay for what he had cut on the land, if the tenants would pay the costs of the referees ; the terms were acceded to and complied with, and the agreement as to the line reduced to writing and signed by the demandant.   *Held,* that the settlement of the line and the agreement signed by the plaintiff in reference thereto, were on a good and valid consideration and binding as any other contract for such consideration.

A new trial was not granted, where the evidence was conflicting and the cause left to the determination of the jury under a clear and impartial charge.

A new trial, on the ground of newly discovered evidence, which, though important, would not be likely to change the result, will not be granted where the evidence if sought for could have been as readily obtained before the trial as after.

ON EXCEPTIONS.

WRIT OF ENTRY, dated July 16, 1875.   The premises claimed are nearly triangular and described substantially as follows : Beginning at a hemlock tree in the south line of I 1, marked with the survey mark of Charles Hayden, for the southeast corner of the Eaton tract and the southwest corner of Check lot No. 1, I 1 ; thence northerly, at right angles with the south line of I 1, to the north line of said I 1 ; thence easterly on said north line to the twenty-five mile stream, so called ; thence by the centre of said stream southerly to the south line of said fifteen mile lot I 1 ; and thence westerly on said south line of I 1, to the point begun at.

Plea, general issue, with a disclaimer of one portion and a claimer, so to speak, of another portion, making the whole rectangular, as follows :

PLAN.

North line of K 2.

North line of I 1.

North line of I 2.

Winthrop and Dickinson

C      D

Disputed Land.

Twenty mile stream.

A      B

Check lot     No. 1, I 1.

Check lot No. 1, I 2.

Mile square, I 1.

Mile square, I 2.

Check lot No. 2, I 1.

Check lot No. 2, I 2.

Unity Pond.

Beginning in the southerly line of the fifteen mile lot I 1, according to Hayden's survey, at a hemlock tree supposed to be marked with the survey mark of Charles Hayden, surveyor, as and for the corner of the Eaton tract, so called, and the plaintiff's lot, thence running north and at right angles with said southerly line of the fifteen mile lot to the southerly line of the Carver lot, being the old Winthrop and Dickinson tracts, on I 1, thence easterly on the south line of the last named lot to the west line of Check lot No. 1, I 1; thence southerly on the west line of Check lot No. 1, I 1, to the southerly line of fifteen mile lot I 1; thence westerly on the southerly line of the fifteen mile lot, I 1, to the point begun at; and as to the residue of the land described in the plaintiff's writ the defendants disclaim all title or possession.

It was conceded at the trial that the western boundary of Check lot No. 1, as shown by the plan, was the division line between the parties. The contention was as to the position of this line on the face of the earth, the plaintiff contending that C. D. was this line; and that it would give the defendants more by some twenty-four rods in length than all the land their deeds called for, referring to the ancient Hayden plan of 1812 and applying the scale thereto, from Sebasticook river easterly. The defendants, without denying this, also relied upon the Hayden plan, which appears to have been based upon a sufficiently liberal survey to give all parties the quantities called for and leave a larger surplus than the disputed strip, and contended that the early deeds under which the plaintiff claimed, admitted to have been loosely drawn, must depend for their location upon the Hayden plan to which they refer, and that applying the scale from Unity pond westerly, the line A. B. answered all the calls of the plaintiff's deeds as to quantity and derived support from the lines of occupation, which correspond not only with the lines on the check lots in range I 1, but with the extension of such of those lines as extended through range I 2, and formed opposite sides of check lots in that range as shown on the plan.

There was among much documentary and oral evidence introduced on each side, evidence of admissions of defendants' grantors

tending to show that the line was as the plaintiff claimed; and also evidence, on the part of the defendants, of an attempted reference and consequent settlement of the line between the parties in 1871. The verdict was for the defendants; and the plaintiff alleged exceptions, which sufficiently appear in the opinion.

*J. Baker,* for the plaintiff.

*E. F. Webb,* for the defendants.

APPLETON, C. J. This is a real action, in which the demandant can only recover on the strength of his title and not on the weakness of that of the tenant.

The case comes before us upon exceptions and upon motions to set aside the verdict as against evidence, for newly discovered evidence and for tampering with the jury.

(1) The first exceptions alleged relate to the effect of the declarations of the grantors of the tenants. After alluding to them, the presiding justice proceeds as follows: "Before you will give any effect to these declarations, you will see that they are not the declarations of these defendants; they are the declarations of their grantors; they are not conclusive in the matter, but they are evidence tending, as it is claimed, if true, really to establish or confirm the claim made by the plaintiff; but you must be satisfied that those statements were made, that you have a true account of them, because the law acts upon the presumption that a party would not make false statements in disparagement of his own title."

·. The declarations of a party adverse to his own interest are obviously entitled to grave consideration. But they may be made under mistake. They are not conclusive. They do not constitute an estoppel. The declarations of a party may be strong evidence of a boundary, but if erroneous, they do not pass a title.

This instruction is favorable rather than adverse to the demandant. If true, the jury were told, the declarations proved tended "really to establish or confirm the claim made by the plaintiff." The instructions are unobjectionable. If not sufficiently full, further instructions should have been requested. The exceptions

are to the instructions given, not for the absence of additional instructions that might properly have been given, but which were not asked for.

(2) It seems there had long been a controversy as to the boundaries of the tract of land in dispute. To settle this controversy a reference was entered into, submitting the whole matter to the determination of a justice of this court and two surveyors. The parties met on October 25, 1871. The two surveyors were present and Mr. Garland, an old surveyor, who had been long acquainted with the line in dispute.

One of the referees, Noah Barker, commenced running and had proceeded some distance when the demandants proposed to agree upon the line as claimed by the tenants and to pay for all he had cut upon their land that year, if the tenants would pay the costs of the referees. These terms were acceded to and the tenants paid the referees some fifty dollars. It was further agreed that Garland should complete the running of the line which had been commenced by Mr. Barker. The next day the agreement as to the disputed lines was reduced to writing and signed by the demandant. In it he agreed "on examination of the premises that said line is where it was claimed to be by the late Joseph Eaton, who while he was alive, owned the land on the west of said line. . . . said westerly line being the same which Noah Barker on the 25th day of October, 1871, partially run out and which David Garland is to finish by agreement between me and the present owners of said Eaton land, and to establish it by suitable monuments." There is a further agreement as to the Flye lot.

In accordance with this agreement, the residue of the line was run out by Garland and suitable monuments established. This is the line claimed by the tenants, and found by the jury to be the true line.

The settlement of the line and the agreement signed by the plaintiff in reference thereto was upon a good and valid consideration and binding as any other contract for such consideration.

In reference to this, the instruction given was as follows : "I do not understand that it is denied by the plaintiff that there was any settlement; I understand he admits there was a settlement

made at the time, an agreement to abide by line "A B" as designated upon Hersey's plan. If that was so, that would be an end of this case, if it was binding. The parties had a right, if there was a matter in dispute, to agree upon a certain line, and if they did do that under the circumstances testified to by the defendants and not substantially controverted by the plaintiff, it would be competent for them to do so and the parties must be bound by the arrangement thus made."

The last sentence is one which the counsel for the demandant claims to be erroneous. The contract reduced to writing, for a sufficient consideration and signed by the party to be charged is assuredly binding. It is one which a court of equity would enforce. It would be unreasonable to hold that a contract of such a description voluntarily entered into in good faith was of no avail.

But the rights of the demandant were amply protected in a subsequent part of the charge, where the following instruction was given in relation to the settlement of the line between the parties: "If he (the plaintiff) was mistaken, if he was misled and mistaken in regard to material facts and actually did enter into that under a misapprehension of his own rights, then the arrangement made between him and the defendants would not be binding between the parties."

The whole question as to the settlement was thus submitted to the jury with as favorable instructions for the demandant as he could reasonably ask. The settlement was not even declared to be conclusive, but only binding as any other contract, provided the demandant was neither misled nor mistaken in entering into it. The force and effect of the evidence was left to the jury.

(3) The motion for a new trial as against evidence cannot be sustained. There was much conflicting evidence; and the cause was left to the determination of the jury under a clear and impartial charge. No sufficient reason has been shown for interfering with their conclusion.

(4) The controversy as to the boundaries of the Eaton tract has been of long continuance. It resulted in a settlement in 1871. It has been renewed by the institution of this suit. Since

the verdict it is claimed there has been a discovery of new and material evidence. That discovery consists in the production of certain deeds, which if sought for, could have been as readily obtained before as after the trial, and in a new survey by Mr. Abbott of the disputed lines, which the plaintiff might have had whenever he chose.

The new evidence might have been had with the same efforts before as were made after the verdict. If it had been seasonably procured we do not think it would have been likely to have changed the result.

(5) It is alleged that one of the defendants' witnesses made certain remarks before one of the jury—as that he knew all about the case, and that Hunter knew where the line was as well as he did. But these remarks are immaterial. Besides, the name of the juryman is not disclosed, so that the tenants could not contradict the testimony, if it were deemed of sufficient importance to require contradiction, without calling all of the jury, which would be very burdensome. Indeed the whole evidence is too shadowy and indefinite to justify judicial interference. The counsel for the plaintiff knew what was said and done while the case was on trial and did not interfere or disclose what he knew to the court. As for the tenants, there is not the slightest evidence of any misconduct on their part. No sufficient grounds are disclosed why the court should disturb the verdict.

*Motions and exceptions overruled.*

DICKERSON, DANFORTH, VIRGIN and PETERS, JJ., concurred.