Coös,
June, 1900. }

70  399|
ₒ72  196|

## HITCHCOCK v. LIBBY & a.

The owners of adjoining lands may locate the divisional line by parol agreement when its location is uncertain and there is a controversy between them in respect to it, notwithstanding the line was located elsewhere in a similar manner by prior owners of the lots twenty-five years earlier,— the last owners having no knowledge of the former location and acting in good faith.

A parol agreement between adjoining landowners as to the location of a disputed divisional line is not within the statute of frauds.

In trespass *quare clausum* for cutting down and carrying away wood, the measure of damages is the value of the trees on the stump when there is no substantial damage other than that arising from the cutting.

TRESPASS, *quare clausum*, for breaking and entering the plaintiff's close, and cutting down and carrying away wood.   Facts found by a referee.   The plaintiff owns lot No. 165, as appears on the plan of Gorham, and the defendants own the adjoining lot on the west, being lot No. 164 on the plan.   The Peabody river runs northerly on or near the line between the lots.   Since 1826 the river, in a part of its course, has run in a channel located several rods further east than its former channel.   The alleged trespass was committed on a triangular piece of land bounded on the east by

the new channel of the river, and on the west and north by lines particularly described in the writ. The plaintiff's chain of title, extending back to 1857, describes the land conveyed as lot No. 165, without giving the boundaries. The defendants' chain, extending back to 1839, describes the land conveyed as lot, or part of lot, No. 164, describing the boundary lines. The earliest deed in this chain, dated November 8, 1839, describes the southerly and easterly lines as follows: "Thence [i: e., from the southwest corner of lot No. 164] east on said line to the bank of Peabody river; thence down bank of said river to the Androscoggin river." About 1853, the occupant of lot 164 sued the occupant of lot 165 for carrying away timber which the former had cut upon the triangular piece of land above mentioned. The parties submitted the question of the location of the dividing line between their lots and the ownership of the timber to three referees, whose award was to be final. The referees decided that the dividing line was the new channel of the Peabody river. Both parties accepted the award and abided by it.

The lots were owned by other parties in 1878,— 164 by T. H. Hutchinson, and 165 by J. R. Hitchcock, husband of the plaintiff. It did not appear that they knew of the award of 1853. The owner of lot 165 claimed that the dividing line was at an old log fence located westerly of the new channel. The referee "therefore" found there was a controversy as to the location of the line. A surveyor called as a witness by the plaintiff testified, in substance, that he was sent for to run a line and was met by the parties, who informed him what they wanted and took him to the starting point; that others were present who were supposed to know about the starting point; that it was left to two of the outside parties to state where this point was; that after this was settled, the parties requested him to run a line parallel with the town line, which he did from the starting point to the Androscoggin river; that they found in this line on the bank of the Androscoggin river old spotted trees; that when they got there, both parties expressed themselves as satisfied with the line and directed him to reverse the course and run the line back, spot trees, set stakes, and make a notch in the bridge to mark the line, all of which was done,— the parties assisting in setting the stakes; that he made a memorandum of the transaction as follows: "April 29, 1878, ran agreed line between T. H. Hutchinson and J. R. Hitchcock, between lots 164 and 165 in Gorham"; and that he designated it as an "agreed line," because both parties were satisfied with it, directed him to spot the line, and assisted in setting the stakes. The referee took a view which disclosed a mark on the bridge, a pin set in a rock having the appearance of a monu-

ment, stakes, and spotted trees, all corresponding with the line run by the surveyor. The owner of lot 164 has pointed out the pin, the stakes, and spotted trees as being in the surveyor's line; and the owner of lot 165 has pointed out the mark on the bridge and claimed to it. From the foregoing evidence the referee found that the parties agreed to the line so run. He also found that the owners of lot 165 have claimed to that line ever since; but that the owner of lot 164 (Hutchinson) did not recognize it as the true line, for he claimed at different times that his line was Peabody river, cut wood on the tract in dispute after 1878, and deeded his land by a warranty deed as bounded by the river. All the evidence relating to the line of 1878 was received subject to the defendants' exception. This line is west of the new channel of Peabody river, and, if the parties are bound by it, the defendants are guilty as alleged.

The wood cut by the defendants was worth on the stump $30.15; after cutting, on the lot, $43.52; and in the market, $58.52. The defendants knew that the plaintiff claimed the wood, and were forbidden by her to cut and carry it away.

The plaintiff moved for judgment in her favor, and the defendants for judgment in their favor.

*Taggart & Bingham* and *Drew, Jordan & Buckley*, for the plaintiff.

*Alfred R. Evans, Perrin T. Kellogg,* and *Freedom Hutchinson* (of Massachusetts), for the defendants.

CHASE, J.   It appears that there was a controversy in 1878 between the owners of lots 164 and 165 as to the location on the ground of the dividing line between the lots. The referee has so found, and the claim made by the owner of lot 165 that the line was at an old log fence westerly of the new channel of Peabody river, together with the act of the parties in causing a survey of the line to be made, tended to prove the fact. It does not necessarily follow from the establishment of the line in 1853 that there could be no controversy about it twenty-five years later. The parties interested in the line in 1878 were different from the parties who took part in establishing it in 1853, and, so far as appears, had no knowledge of their acts. The owners of 1878 may have been as ignorant of the true location of the line as were the occupants of 1853, and their interests may have required with equal force that the location should be established. There is no suggestion of want of good faith on the part of either of them. The question whether there was a controversy in 1878 being one of fact, and there being

evidence before the referee upon which it could properly be found that there was one, the finding is conclusive.

It is argued by the defendants that because the deeds under which they claim, extending back to 1839, have described this line as the Peabody river, there was no uncertainty about it and consequently no room for controversy. It may be true that there could be no controversy concerning the location of the Peabody river, but that was not the question about which the parties differed. Their disagreement related to the location of the dividing line between lots 164 and 165. The owner of lot 165 said, in effect, that the description of this line in the defendants' chain of title was wrong,— that the line was at the old log fence instead of the river. If, in the title of lot 165, the old log fence had been designated as the line, the defendants would probably take a different view of this matter. They would be more likely to see what the real question in dispute was. So far as appears, the description in the defendants' chain of title did not originate with a grantor who owned both lots; and neither owner was conclusively bound by the description of the line in the other's chain of title.

It has been uniformly and repeatedly held in this state, that adjoining owners of land may locate their dividing line by parol agreement when its location is uncertain and there is controversy between them in respect to it. *Sawyer* v. *Fellows*, 6 N. H. 107; *Gray* v. *Berry*, 9 N. H. 473; *Clough* v. *Bowman*, 15 N. H. 504; *Jones* v. *Dewey*, 17 N. H. 596; *Hobbs* v. *Cram*, 22 N. H. 130; *Orr* v. *Hadley*, 36 N. H. 575; *Dudley* v. *Elkins*, 39 N. H. 78; *Thompson* v. *Major*, 58 N. H. 242; *Bartlett* v. *Young*, 63 N. H. 265. Such an agreement does not create a new line and transfer a title to land from one party to the other, thereby conflicting with the statute of frauds, but simply locates on the ground the line to which the title on either side extends. It merely removes the uncertainty previously existing in respect to such location, and by so doing settles a controversy. The case falls within the general policy of the law, which allows parties to settle and adjust doubtful and disputed facts between themselves and holds them to the settlement when made in good faith. *Vosburgh* v. *Teator*, 32 N. Y. 561, 567; *Pitkin* v. *Noyes*, 48 N. H. 294, 304; *Flannagan* v. *Kilcome*, 58 N. H. 443, 444.

There being a controversy between the owners of the lots in 1878 respecting the dividing line, it follows from the foregoing decisions that the evidence introduced by the plaintiff tending to show that they then agreed upon the line was competent. The evidence was also sufficient to support the referee's finding that an agreement was made. The parties to this action are bound by the agreement, and consequently the plaintiff is entitled to judgment.

The plaintiff is not entitled to the increased value of the trees cut, occasioned by the defendants' labor in converting them into wood. *Foote* v. *Merrill*, 54 N. H. 490; *Beede* v. *Lamprey*, 64 N. H. 510, 511. It not appearing that she suffered any substantial damage other than that arising from cutting the trees, her judgment should be for $30.15, with interest.

*Judgment on the report for the plaintiff.*

All concurred.