LIZZIE M. KITCHEN, Appellant, v. P. W. CHANTLAND, Appellee.

**Boundaries.** A government corner referred to in a plat as a certain corner of the tract platted, which is sufficiently identified, will control as against a monument set to fix the boundary of a lot in the plat.

**Adverse possession:** EVIDENCE. A certain line acquiesced in by adjacent land owners for a period of ten years will be considered the true boundary. Evidence held to show acquiescence.

**Parol agreement as to boundary:** STATUTE OF FRAUDS. When there is a dispute or uncertainty as to the location of the true boundary line, the parties may fix a line by parol agreement, and where the agreement is followed by possession the statute of frauds does not apply, although the possession may not have been for the full statutory period.

**Mistake of law:** EQUITABLE RELIEF. Equity will not relieve one from his mistake of law with reference to the effect to be given certain evidences as to the boundary line of his land.

*Appeal from Webster District Court.*—HON. J. R. WHITAKER, Judge.

MONDAY, NOVEMBER 20, 1905.

Rehearing denied May 24, 1906.

THIS is a controversy over the boundary line between plaintiff's and defendant's lots. The trial court dismissed plaintiff's petition, and she appeals.— *Reversed.*

*Kenyon & O'Connor,* for appellant.

*William T. Chantland,* for appellee.

DEEMER, J.— Defendant is the owner of a tract of ground ninety by one hundred and fifty-two feet in the southwest corner of block 1 in Plumb's addition to the city of Ft. Dodge; and plaintiff owns a tract immediately adjoining that of defendant on the east, ninety-seven by one hundred and fifty-two feet. The southeast corner of the block, which is one hundred and eighty-seven feet in width, is owned by one Mahar. This controversy is over the boundary line between plaintiff's and defendant's tracts; there being a dispute as to a strip seven and one-half feet in width running the entire length of the two pieces. For the true line plaintiff relies upon what is called the " Reynolds Sur-

vey," which commenced at a stone in the center of a government section, which was the southeast corner of the plat in which the block is found; while defendant relies upon what he claims is a fixed monument found at the southeast corner of block 2, which adjoins block 1 on the west.

The quarter corner to which we have referred is the one referred to in the original plat as the southeast corner of the addition, in which block 1 is found; and, if that corner is sufficiently identified, it must control, even as against a monument set to fix the boundary of lot 2. Of course, if there were monuments fixing the corners and lines of the plaintiff's and defendant's properties, these would control, even as against the plat. We do not find that any such have been established by the evidence, however, and are satisfied that the stone found at the center of the section, which marks the corner of the plat, is identified with sufficient certainty to justify its use as a starting point for retracing the lines, and that the Reynolds survey is correct. Such being the fact, the true dividing line between the tracts of land in controversy is where plaintiff claims it to be. She should, then, have a decree as prayed, unless defendant has shown such recognition or acquiescence in the boundary claimed by him as to warrant a decree in his favor.

1. Boundaries.

Defendant purchased all but ten feet of his land from one Nagle in the year 1878. He immediately moved upon the premises, and has occupied the same as a homestead down to this time. The remaining ten feet he purchased in the year 1901. Plaintiff purchased all but ten feet of her strip of one Colburn in the year 1894, and the remaining ten feet she bought in the year 1901. At the time each purchased their several pieces of ground there was a picket fence, separating the two lots, built upon the line now claimed by the defendant: and at the rear end of the lot, about one hundred and forty-two feet from the south end, was a chicken house built with reference

2. ADVERSE POSSESSION: evidence.

to the line defendant now claims as the true one. There has never been a division fence between the ten-foot strips. This division fence had been erected when defendant purchased his property, and was treated as the boundary line by the adjoining owners, save as hereinafter indicated, down to the time plaintiff purchased her property. It was allowed to decay, and was finally removed by the defendant some two or three years after plaintiff purchased her property. About the year 1901 some other parties purchased the north half of the block, and they caused a survey to be made by the city engineer, who found that both plaintiff and defendant were using about ten feet more ground on the north end of their properties than they were entitled to, and they thereupon purchased the ten feet of ground hitherto mentioned, adding this ten feet to their previous holdings. At this time neither plaintiff nor defendant had improved that part of their properties fronting upon the street to the south, and, desiring to do so, one or the other proposed that the line be run between them. This was agreed to, and Reynolds, the engineer, ran the line, which plaintiff now claims to be the true one. Before that, however, defendant acknowledged to plaintiff that he was holding four or five feet of ground belonging to her, and he offered to purchase the same, giving his barn, which was on the northwest corner of his premises, therefor. This survey was made in the spring of the year 1902, and the parties almost immediately proceeded to improve their lots with reference thereto; and it was agreed that this survey marked the dividing line between their lots. Expenses of the improvements made in front of the lots were shared accordingly, and defendant removed the chicken house, which was over the line at the north end of the lots, and promised to remove that part of the dwelling house which was over the line. He also removed the remaining posts and remnants of the old fence, together with some other posts which had been set on the old line for a temporary purpose. Plaintiff thereupon took possession of the strip in dispute,

filled up some low places, sodded it in front, and planted garden upon it at the rear end. He also cut down some trees growing thereon, and improved it generally, all with the knowledge and implied, if not express, consent of the defendant. Some time thereafter, and in the year 1903, the defendant evidently changed his mind, for he sent some men to erect a new fence along the line occupied by the old one. Plaintiff thereupon brought this action to enjoin defendant from erecting the fence, and to quiet her title to the strip in dispute.

We have seen that the true line, according to the plat of the addition, is where plaintiff claims it to be; and the next proposition is, is defendant entitled, in virtue of acquiescence or adverse possession, to hold the land and to erect a new fence where the old one was? We have had occasion to consider this character of action many times during the past ten years, and the rules applicable thereto are pretty well understood. If these two neighbors or their grantors have acquiesced in a certain boundary line as the true one for ten years or more, the law will treat that line as the correct one. So that, if the case turned upon the testimony as to the erection of the original fence and recognition and acquiescence therein by the parties before plaintiff purchased her property, we should be constrained to hold with the trial court, to the effect that the line contended for by defendant should be established as the true one. But it seems that almost from the day plaintiff purchased her land defendant was admitting that the fence and improvements upon his lot were not upon the true line. He offered to buy some of the strip on his side of the division fence — wanted to exchange a barn for it. When he found that his north line, as improved and fenced by him, was too far north, as shown by a survey, he purchased enough so that he might own and hold to the line so occupied by him. He proposed a survey for the purpose of establishing the true line between him and the plaintiff. At any rate he consented to

the survey, and after it was made recognized the line fixed by the surveyor as the true one. He not only improved with reference thereto, but he saw plaintiff making improvements and going to expense, relying upon the Reynolds survey, without any objection on his part. After all of these things had been done he, for some reason, changed his mind; it is said because he read some of the decisions of this court, and concluded to rebuild the fence and claim up to the old line. This conduct is explainable only upon the theory that defendant never recognized the old fence as being upon the true line, and that he did not himself regard it as being upon the line. Had he thought it upon the line, he would not have been offering to buy some of the land on his side of the fence. He would not have consented to a resurvey, nor would he have removed the old fence and permitted plaintiff to use and improve the ground in dispute. The mere fact that there is a fence upon a line claimed by one of the parties is not conclusive upon the question of acquiescence or adverse possession. *Palmer v. Osborne,* 115 Iowa, 715. Plaintiff at no time regarded the old fence as being on the line, and certainly she never agreed that it was. The most that can be said of the matter is that there was doubt and uncertainty, and perhaps a dispute, as to the true line after plaintiff acquired title to her property. Settlement was proposed by having a surveyor run the line. This was done, and the one claimed by plaintiff was fixed by the surveyor as the true one. With the knowledge and consent of defendant plaintiff took possession of the strip in dispute, used, occupied, and improved it after the survey was made, and defendant did nothing, until about the time this suit was commenced, to indicate that he was not satisfied with the survey.

Contrary to defendant's contention, the rule of law is well settled, that if there be doubt or uncertainty, or a dispute as to the true location of a boundary line, the parties may by parol fix a line which will, at least, when followed by possession with reference to the boundary so fixed, be con-

clusive upon them, although the possession may not have been for the full statutory period. Page on Contracts, 729; *Clayton v. Feig,* 179 Ill. 534 (54 N. E. 149); *Vosburgh v. Teator,* 32 N. Y. 361; *Boyd v. Graves,* 4 Wheat (U. S.) 513 (4 L. Ed. 628); *Glover v. Wright,* 82 Ga. 114 (8 S. E. 452); *Jones v. Pashby,* 67 Mich. 459 (35 N. W. 152, 11 Am. St. Rep. 589); *Olin v. Henderson,* 120 Mich. 149 (79 N. W. 178); *Pittsburgh Co. v. Lake Sup. Co.,* 118 Mich. 109 (76 N. W. 395). Definite settlement of the boundary is a sufficient consideration for the agreement. *Hunter v. Heath,* 67 Me. 507; *Gardner v. White* (Ky.) 74 S. W. 206; *McCoy v. Hutchinson,* 8 Watts & S. 66. Such an agreement is not within the statute of frauds. *Adair v. Crane* (Cal.) 8 Pac. 512; *Hitchcock v. Libby,* 70 N. H. 399 (47 Atl. 269); *Lecomte v. Toudouze* 82 Tex. 208 (17 S. W. 1047, 27 Am. St. Rep. 870); *Farr v. Woolfolk,* 118 Ga. 277 (45 S. E. 230) *Grim v. Murphy,* 110 Ill. 271; *White v. Peabody,* 106 Mich. 144 (64 N. W. 41). We have held that there may be a voluntary parol partition of lands. See *Hays v. Marsh,* 123 Iowa, 84. Even if the case be within the statute of frauds, possession was taken under the agreement, and this removes the bar. Code, section 4626.

**3. PAROL AGREEMENT AS TO BOUNDARY: statute of frauds.**

But appellee says that the agreement was made through mistake of fact or law, or both, and is not, therefore, binding upon him. This claim is based upon the proposition that he was mistaken as to the true boundary line. If so, it was not because of any misrepresentation or concealment on the part of the plaintiff, or because of any misunderstanding of the facts with reference to the true line. The true line is, as we think, where the plaintiff contends it to be. Defendant was not mistaken as to any of the facts tending to show acquiescence on the part of the plaintiff or her grantors in the division line as made by the old fence, for he knew all the facts with reference thereto. His mistake, if there was one, was

**4. MISTAKE OF LAW: equitable relief.**

with reference to the effect of the division fence upon the true line. This may have been a mistake of fact or of law. If he did not regard the old fence as being on the true line, then, of course, he did not acquiesce in it, or claim it to be on the true line. And, if that be true, he has no standing in this court. But if, as we believe, he was mistaken as to the law when he agreed to recognize and be bound by a line to be run by the surveyor, a court of equity will not, under the circumstances disclosed by this record, relieve him. Mc-Coy v. Hutchinson, *supra; German Bank v. Geneser,* 116 Iowa, 119. His mistake, if there was one, was in his recognition of the fact that the line marked by the old fence was not the true one, or at least was not conclusive. This, of course, negatives the idea that it was a line acquiesced in and believed to be the correct one by himself and his neighbors for so long a time that, no matter where the true line, the one so established and recognized should be regarded as controlling. Mere mistake of law as to the effect of a given state of facts is not, as a general rule, sufficient basis for 'relief either in law or in equity. But in any event this plaintiff never recognized the old fence as being on the true boundary line, nor did defendant ever claim to her that it was. Between plaintiff and defendant there was always doubt and uncertainty, if not a dispute, as to the boundary line. They never treated the fence as being on the true line. To settle that doubt and uncertainty, which was intensified by the survey of the lots to the north, they, by agreement, called a surveyor, who fixed a line which both parties thereafter recognized and improved with reference to. This was followed by plaintiff's taking possession up to the line fixed by the surveyor. Such being the record, the decree should have been for plaintiff, in accordance with the prayer of her petition.

The cause must be reversed, and remanded to the district court for a decree in harmony with this opinion.— *Reversed* and *remanded.*