OPINION
Appellant, Melvin K. Winegardner appeals a judgment of the Common Pleas Court of Allen County finding that Appellee, Gary P. Richardson, acquired title to a portion of Appellant's property by the doctrines of adverse possession and acquiescence. For reasons expressed in the following opinion, we affirm the judgment of the trial court insofar as it relates to the issue of acquiescence.
This action was filed by Appellee to quiet title to a portion of land abutting his farm property. The portion of land in dispute is a twelve (12) foot wide, two hundred seventy (270) foot long strip of grass that lies adjacent to the property boundary between the parties. Appellee claims he has satisfied the twenty-one year statutory period contained in R.C. 2305.04, and acquired title to the disputed portion of land by adverse possession. Appellant, however, as record title holder of the disputed portion of land, claims that Appellee has not acquired title by adverse possession.
This is the second time the matter has been before this court. The trial court originally found, by a preponderance of the evidence, that Appellee had acquired title to the disputed strip of land by adverse possession. On appeal, this court remanded the case to the trial court to reconsider the evidence in the light of the correct standard for adverse possession, which is clear and convincing evidence. On remand, the trial court found, by the appropriate standard, that Appellee had acquired title by adverse possession. The trial court also found that in addition to adverse possession, Appellee acquired title to the disputed portion of land by the doctrine of acquiescence.
Appellant now appeals this latest judgment of the trial court, assigning two errors for our review, which will be addressed together.
 Assignment of Error No. 1 The trial court erred in finding that the Plaintiffs had established adverse possession when the evidence did not support such a finding on all of the elements of adverse possession.
 Assignment of Error No. 2 The trial court erred in dismissing the Defendants' counterclaim for trespass, ejectment, quiet title and damages.
The following facts are pertinent to this appeal:
 In 1937, Helen Ernsberger ("Ernsberger") inherited one hundred sixty (160) acres of farmland in Allen County, located in sections twenty-three and twenty-six of Auglaize Township. She became the sole owner of the farm in 1953. In 1938, Garner Winegardner acquired an eighty acre farm in Allen County, which was located directly east of, and abutting the north portion of the Ernsberger farm.
In 1964, Appellee, Gary Richardson, became the tenant farmer on the Ernsberger farm. At that time, there was an existing line fence and a partial tree line that was recognized and honored as a boundary line between the two properties. Sometime during the late 1970's, Richardson, with the consent of Winegardner, removed part of the fence; however, the tree line remained. In 1982, Appellee inherited and became the sole owner of the Ernsberger farm.
In 1976, Garner Winegardner died leaving his farmland to his wife, Evelyn, his son, Wallace, and his daughter, Velma Spencer. In 1992, Evelyn and Velma transferred their interests to Wallace Winegardner, making him the sole owner of the Winegardner farm. In 1995, Wallace Winegardner sold a 2.3-acre tract off the west side of the Winegardner land to his cousin, Appellant, Melvin Winegardner.
The record reflects that Appellee and both predecessors in title to Appellant's land honored the fence and tree line as the dividing line between the two properties. In fact, the record reveals that Appellee regularly mowed the grass and maintained the disputed area. However, in 1995, Appellant had his land surveyed and discovered that the actual boundary line between the parties was not the tree line, but a line about twelve feet west of the tree line. Appellant thereafter claimed ownership of the strip of land, which was approximately twelve (12) feet in width, two hundred seventy (270) feet in length, and just west of the tree line. Appellee did not dispute the results of the survey but, rather, argued that he has gained title to this strip of land by adverse possession. Based upon the following analysis, we agree with Appellant's argument that the elements of adverse possession were not met. However, we conclude, as did the trial court, that the doctrine of acquiescence operates to provide Appellee the relief granted.
A demonstration of adverse possession must be judged on a case-by-case basis. Thus, in order to determine whether adverse possession applies in this case depends on the evidence presented at trial regarding the use and treatment of the land. To acquire property by adverse possession, the party claiming title under the common-law doctrine must demonstrate "exclusive possession and open, notorious, continuous, and adverse use for a period of twenty-one years." Grace v. Koch (1998), 81 Ohio St.3d 577, 579. Adverse possession must be proven by clear and convincing evidence. Id. at syllabus. "Clear and convincing evidence is that proof which establishes in the mind of the trier of fact a firm conviction as to the allegations sought to be proved." Crossv. Ledford (1954), 161 Ohio St. 469, 477.
Our examination of this claim of adverse possession begins with the recognition that the transfer of land by adverse possession is disfavored in the law. "Generally speaking, since there are no equities in favor of a person seeking to acquire property of another by adverse holding, his acts are to be strictly construed." Demmitt v. McMillan (1984), 16 Ohio App.3d 138,141 quoting 5 Thompson, Commentaries On The Modern Law of Real Property (1979) 604, Section 2543.
No cause of action accrues to commence the running of the statute of limitations until the adverse user actually enters into possession claiming openly and hostilely that he is the owner in derogation of the rights of the true owner. Briegel v. Knowlton
(June 20, 1989), Allen App. No. 1-87-45, unreported.
As in Briegel, the case before us presents lawn mowing in the disputed area as the only act of ownership regularly carried on by Appellee sufficient to commence the running of the statute of limitations. The law is well established that merely mowing grass, regardless of the intent of the claimant, is insufficient as a matter of law to amount to the required possession, and is therefore insufficient to commence the running of the statute of limitations upon which adverse possession can be founded.Montieth v. Twin Falls Methodist Church (1980), 68 Ohio App.2d 219,225; Klinger v. Premier Properties (Nov. 17, 1997), Logan App. No. 8-97-10, unreported; Suever v. Kinstle (Nov. 29, 1989), Allen App. No. 1-88-24, unreported; Briegel v. Knowlton (June 20, 1989), Allen App. No. 1-87-45, unreported.
The factual situation in this case, a mutual mistake as to where the true boundary lies, and subsequent acquiescence in some other line established by the adjoining owners, does not lend itself to easy analysis by the strict rules of adverse possession. Judge Milligan, in his concurring opinion in Bebout v. Peffers
(Aug. 18, 1986), Knox App. No. 86-CA-02, unreported, suggests that equitable doctrines other than adverse possession should be applied to situations as presented herein. He observes:
 "Historically * * * a preference developed for protecting the user of land against the larger nonusing land owner. It would appear that in the 1980's ownership and marketability of land is more important. Adverse possession operates in opposition to a reliance on ownership and marketability by clouding title, thereby defeating one of the most important policies of property law — facilitation of the alienation and transfer of property."
In this vein, the trial court, in the Judgment Entry issued May 11, 1999, held that Appellee gained title to the disputed portion of land not only by adverse possession, but also by the doctrine of acquiescence.
The doctrine of acquiescence is recognized in some states as a part of the doctrine of adverse possession, and in others as part of the doctrine of estoppel. Acquiescence rests upon the practical reality that the true location of most boundary lines is uncertain between two property owners, and that neighbors may establish between themselves a boundary evidenced by monuments, such as a line fence, and when these agreements are followed by possession, the boundary so fixed will be conclusive upon them.Kitchen v. Chantland (1905), 130 Iowa 618, 105 N.W. 367.
This doctrine is applied when adjoining landowners occupy their respective properties up to a certain line, and mutually recognize and acquiesce in that line as the property boundary for a certain period of time, usually equal to the twenty one (21) year statutory time period for adverse possession pursuant to R.C.2305.04. See generally, Annotation, Establishment of Boundary Line By Oral Agreement Or Acquiescence (1930 Supp. 1938), 69 ALR 1430, 113 ALR 421; Bobo v. Richmond (1874), 25 Ohio St. 115, 122;Ballard v. Tibboles (Nov. 8, 1991), Ottawa App. No. 91-OT-013, unreported; Turpen v. O'Dell (Oct. 14, 1998), Washington App. No. 97CA2300, unreported.
In Bobo, the Supreme Court of Ohio stated:
 [W]e hold the principle to be well settled that an agreement upon a division line between adjoining land-owners, different from the true line, the true line being a certain, and not a disputed line, and acquiescence by all the parties in such agreed line, for a length of time that would bar a right of entry under the statute of limitations in relation to real estate, would operate to prevent a party purchasing from one of such owners, with notice of the agreed line, from setting up a claim to any line other than that agreed upon * * *
Bobo, 25 Ohio St. at 122.
In Ballard v. Tibboles (Nov. 8, 1991), Ottawa App. No. 91-OT-013, unreported, the Sixth District, citing Annotation, Fence As A Factor In Fixing Location Of A Boundary Line — Modern Cases (1981 Supp 1990), 7 A.L.R.4th 57, 59 Section 2[a], stated:
 "Generally, however, the following two requisites must be present in order to apply the doctrine of acquiescence. First, the adjoining land owners must mutually respect and treat a specific line as the boundary to their property. Second, that line must be treated as such for a period of years, usually the statutory time period required for adverse possession."
That is consistent with the holding in Bobo, 25 Ohio St. at 118. See, also, Engle v. Beatty (1931), 41 Ohio App. 477, 483, quotingHills v. Ludwig (1889), 46 Ohio St. 373, 480; Rutledge v. ThePresbyterian Church of Johnstown (1914), 3 Ohio App. 177, 178;McDonough v. Miller (June 25, 1990), Monroe App. No. 657, unreported; Simon v. Kreuz (April 25, 1997), Fulton App. No. F-96-020, unreported; Turpen v. O'Dell (Oct. 14, 1998), Washington App. No. 97CA2300, unreported.
The record in this case demonstrates that at least between 1964 and 1976, when Appellee and Garner Winegardner were abutting landowners, there existed a fence line that was respected as the boundary line between the abutting farms. During that time, Appellee maintained the disputed portion of land by mowing the grass, seeding the grass and removing brush from the area. After Garner Winegardner died in 1976, Appellee continued to maintain the disputed portion of land in the same fashion. In addition, Appellee also excavated the disputed portion of land in 1982.
The record also demonstrates that Appellee continued to maintain the disputed portion of land after Wallace Winegardner inherited the Winegardner farm in 1982. Wallace testified that during the time his father, Garner, owned the land there was an existing fence line and a tree line separating the adjoining farms. During the time Wallace owned the Winegardner farm, he only farmed east of the tree line and never maintained any of the disputed portion of land. Wallace considered Appellee to be the owner of the land in dispute, and honored the tree line as the dividing line and boundary line of the abutting farmlands. Wallace further testified that he was surprised to find that the survey established the line west of where it had always been.
In spite of the fact that Wallace Winegardner testified at trial that he considered the tree line to be the dividing line between the abutting properties, but not the boundary line, the trial court was apparently unpersuaded. Since at least 1964, the Winegardners have acquiesced in the fence and tree line serving as the boundary line between the abutting farms, and the evidence before the trial court was sufficient to demonstrates this to be true.
In addition, Appellant, Melvin Winegardner, testified that when he purchased the property from Wallace he knew that Appellee had been caring for the disputed portion of property and thought that Appellee owned the property. Therefore, we cannot say, as a matter of law, that the trial court erred in finding, by clear and convincing evidence, that Appellee acquired title to the disputed portion of land by the doctrine of acquiescence.
Accordingly, Appellant's first assignment of error is not well taken and is overruled.
Because we hold that Appellee acquired title to the disputed portion of land by the doctrine of acquiescence, Appellant's counterclaim for damages must necessarily fail as a matter of law.
Therefore, Appellant's second assignment of error is not well taken and is overruled.
Having found no error prejudicial to Appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
HADLEY and SHAW, JJ., concur.