OPINION
Appellants, Charles Andrews and U.S.A. Management and Development, Inc., appeal the judgment issued by the Geauga County Court of Common Pleas.
This appeal involves a boundary dispute between the owners of 255 Center Street in the Village of Chardon, Geauga County, Ohio and the owners of 229 Center Street. The properties, now known as 255 and 229 Center Street, were originally part of the same one-acre parcel, the northwest corner of Lot 103 in Chardon Village, owned by John Murray II. The acre was rectangular in configuration; the west line of the property bordered Cherry Avenue for approximately 145 feet, and the property had approximately 300 feet of frontage on Center Street. In 1870, Murray transferred the easterly portion of his property to Lewis Bowers. The deed recorded in the Geauga County Records contained the following description of the property:
 "bounded * * * on the north by the lot line[,] on the east by land owned by Emerson Hazen[,] south by land owned by James Brewer[,] and west by land of James Brewer[,] containing One half acre of land be the same more or less but subject to all legal highways[.]"
 The westerly parcel, 255 Center Street, retained by Murray, passed successively to Brewer, then to Judd, and in 1893, to Emanuel and Mertie Moyer. Appellees, William McGregor, Emanuel McGregor, William Balch, Marvel Schafrik, Rosalie Henderson, Marian Artz, and John Sell, who are the lineal descendants of Emanuel and Mertie Moyer, currently own 255 Center Street.
The easterly parcel, 229 Center Street, passed successively to Hazen and then to Patchen. In 1920, Mabel and her then husband Gerald McGregor purchased 229 Center Street from Patchen. In 1946, Mabel conveyed 229 Center Street to her nephew Maurice Moyer and his wife Isabelle. In 1976, the Moyers hired Milton Boomhower to conduct a survey of their property. Based on the description in the Murray-Bowers deed of "one-half acre, be the same more or less," the westerly line of the survey plat bisected the original acre and ran through a barn erected in 1927 located on 255 Center Street.
In 1987, the Moyers conveyed 229 Center Street to Lowell Hanson. Prior to the sale, Maurice Moyer told Lowell Hanson that the boundary line was west of a ditch and near the barn. Prior to closing at the request of Midland Title Security, Inc., Lawrence Wilson performed a survey that set the boundary line in the same place as the Boomhower survey. Although the survey revealed that approximately eight feet of the barn located at 255 Center Street was on the property that the Hansons were buying, the deed that was delivered to the Hansons did not contain the Wilson description. Instead, it included the same vague description appearing in the original Murray-Bowers deed. In 1989, the Hansons hired Delmar Kosie to conduct another boundary survey in order to confirm the data provided by the Wilson survey. During the survey, Mr. Kosie found an iron pin and pipe that he believed dated back to the early 1900s, which indicated to him that the boundary line bisected the original acre, the same location depicted by the Boomhower survey.
Subsequent to the Kosie survey, Hanson had a joint survivorship deed prepared that included the description furnished by the survey. In the deed, which was recorded in the Geauga County Records, Hanson and his wife purported to convey land to the line marked by the Boomhower-Kosie surveys to themselves. In May 1997, Hanson, now divorced, conveyed his interest in 229 Center Street to Charles Andrews and his operational company, U.S.A. Management and Development, Inc., who purchased the property with the intent to build a Goodyear tire store.
On May 1, 1997, appellees, the owners of a parcel of land located at 255 Center Street, filed an action to quiet title against Hanson. On May 16, 1997, appellees amended their complaint to include Charles Andrews and U.S.A. Management, Inc. after discovering that Hanson had transferred his interest in 229 Center Street to them.
On May 5, 1999, the trial court, after conducting a bench trial, granted judgment in favor of appellees and ordered that appellants be permanently enjoined from conducting earth-moving and landscaping operations west of the designated boundary line. The trial court also issued the following findings of fact in addition to its decision:
 "5. The boundary between the two parcels was established by agreement of Murray and Bowers without the assistance of a survey.
 "6. The line agreed upon by Murray and Bowers as the boundary between the two lots was located One Hundred Seventy-Four and 35/100 Feet (174.35') east of the west line of Lot 103 in Chardon Village. ***
 "8. As of the year 1893, a large barn occupied a part of the northeast corner of the parcel [located at 255 Center Street], the east wall of which stood approximately *** 166.35 feet east of the west line of the said Lot 103.
 "9. At some point in time after the Moyer purchase, the exact date of which is uncertain, a woven wire fence running north and south was erected to mark the boundary previously agreed upon between the Moyer parcel and that adjoining it on the east.
 "13. By the year 1926, the original barn was in an advanced state of disrepair and had to be demolished.
 "14. A new barn located near the rear of the lot was constructed by Emanuel E. Moyer in 1927. Said barn is still extant.
 "15. Myron H. Baker planted a willow sapling in 1939 on the spot where the northernmost fence post had stood to preserve the boundary location. Said willow tree was planted at a distance of One Hundred and Seventy Four and 35/100 Feet (174.35') east of the west line of Lot 103 in Chardon Village.
 "19. From 1946 until 1987, plaintiffs and their predecessors in title and Maurice and Isabelle Moyer mutually recognized the line marked by the willow tree referenced in Finding No. 15 as the boundary to their respective properties, thereby acquiescing to its validity as such.
From the trial court's judgment, appellants assign the following errors:
 "[1.] The trial court erred by failing to find the historical boundary line described in every public document and survey from 1867 through 1997 dividing the original one (1) acre lot into two (2) half-acre lots.
 "[2.] The trial court erred in holding that the boundary line was set by agreement in 1867.
 "[3.] The trial court erred in holding that the boundary was set by acquiescence.
 "[4.] The trial court erred in holding that the boundary line was set by adverse possession.
 "[5.] The trial court erred in holding that in 1939 Mabel McGregor abandoned any claim to property west of the line alleged by appellees.
 "[6.] The trial court erred in admitting the affidavit of Mabel McGregor into evidence.
 "[7.] The trial court abused its discretion by denying appellants' motion to withdraw or amend admissions."
 Because appellants' first five assignments of error relate to the contention that the trial court erred by finding that the boundary line between 255 and 229 Center Street is 174.35 feet east of the west line of Lot 103 in Chardon Village, we will address them together. Appellants contend that the trial court should have concluded that the Kosie survey accurately represented the boundary line between 255 and 229 Center Street for the following reasons:
 Every document in the chain of title for 255 and 229 Center Street reflects the intent of Murray, the original grantor, to divide his acre into two half acre parcels;
 No evidence exists to support the trial court's finding that "the boundary between the two parcels was established by agreement of Murray and Bowers without assistance of a survey";
 The boundary line could not be set by acquiescence because the property owners did not agree to set a boundary until 1984, which does not satisfy the twenty-one year statute of limitations;
 The boundary line could not be set by adverse possession because appellees use of the strip of disputed land was not hostile or exclusive; and
 No evidence exists to support the trial court's finding that Mabel McGregor Baker abandoned her interest in the disputed strip of property.
 Appellants assert that this boundary dispute is controlled by the initial grantor's intent to divide his property into two half-acre parcels. They maintain that this intent is reflected in every public document from 1867 to 1997; however, the property owners for the last forty years previous to Lowell Hanson did not recognize the half-acre mark as the boundary between 255 and 229 Center Street.
The facts in this case support the trial court's conclusion that the boundary was set by the doctrine of acquiescence. The Ohio Supreme Court recognized the doctrine of acquiescence in 1874 in the case of Bobo v. Richmond (1874),25 Ohio St. 115, when it held that:
 "Where the boundary line of adjoining land-owners, called for in their deeds, and ascertainable with certainty by survey, had been altered by agreement of the parties, and the occupancy by each up to the agreed line, by improvements and otherwise, had been acquiesced in and continued for a sufficient length of time to bar a right of entry, under the statute of limitations: Held, that an answer setting up these facts constitutes a good defense to an action by one of such owners, or his grantee with notice, for the recovery of the land lying between the two lines." Id. at paragraph one of syllabus.
Appellate courts have applied the doctrine of acquiescence to boundary disputes similar to the dispute in the instant case. InRichardson v. Winegardner (Nov. 2, 1999), Allen App. No. 1-99-56, unreported, the Third Appellate District explained the doctrine as follows:
 "The doctrine of acquiescence is recognized in some states as a part of the doctrine of adverse possession, and in others as part of the doctrine of estoppel. Acquiescence rests upon the practical reality that the true location of most boundary lines is uncertain between two property owners, and that neighbors may establish between themselves a boundary evidenced by monuments, such as a line fence, and when these agreements are followed by possession, the boundary so fixed will be conclusive upon them. Kitchen v. Chantland (1905), 130 Iowa 618, 105 N.W. 367.
 "The doctrine is applied when adjoining landowners occupy their respective properties up to a certain line, and mutually recognize and acquiesce in that line as the property boundary for a certain period of time, usually equal to the twenty one (21) year statutory time period for adverse possession pursuant to R.C. 2305.04. See generally, Annotation, Establishment of Boundary Line By Oral Agreement or Acquiescence (1930 Supp. 1938), 69 ALR 1430, 113 ALR 421; Bobo v. Richmond (1874), 25 Ohio St. 115, 122; Ballard v. Tibboles, (Nov. 8, 1991), Ottawa App. No. 91-OT-013, unreported; Turpen v. O'Dell (Oct. 14, 1998), Washington App. No. 97CA2300, unreported."
In Ballard v. Tibboles (Nov. 8, 1991), Ottawa App. No. 91-OT-013, unreported, the Sixth Appellate District stated:
 "Various jurisdictions tend to delineate different elements for acquiescence because this doctrine is frequently confused with and mingled with the elements of the separate doctrines of adverse possession, estoppel and agreement. [citation omitted]. Generally, however, the following two requisites must be present in order to apply the doctrine of acquiescence. First, the adjoining land owners must mutually respect and treat a specific line as the boundary to their property. Second, that line must be treated as such for a period of years, usually the statutory time period required for adverse possession. [citations omitted]."
 As demonstrated by the modern case law in Ohio, contrary to appellants' contention, adjoining landowners do not need to specifically agree to a certain boundary line different than the line described in the deed before the doctrine of acquiescence applies. The doctrine is applicable when adjoining landowners mutually respect and treat a specific line as the boundary to their property for at least twenty-one years.
In the case sub judice, William McGregor testified that his family treated the willow tree located at 174.35 feet east of the west line of Lot 103 as the boundary between 255 and 229 Center Street ever since the tree was planted in 1939. Isabelle Moyer testified that while she possessed 229 Center Street, from 1946 to 1987, she considered the boundary to be the ditch near the willow tree. She further testified that she never made any effort to occupy any land west of the ditch and the willow tree. The record shows that a large barn is located at 255 Center Street and if the boundary line were at the half-acre mark, a portion of that barn would be on 229 Center Street. The evidence presented at trial demonstrates that the doctrine of acquiescence is applicable.
Because the doctrines of acquiescence and adverse possession are mutually exclusive, a determination that adjoining property owners have acquiesced in a certain boundary line precludes a determination that one property owner has adversely possessed his neighbor's property. See Richardson, supra. In the instant case, the trial court found that from 1893 to 1987, Emanuel Moyer and his successors in title exercised exclusive, uninterrupted, continuous, and undisputed possession of the subject property to the line located 174.35 feet east of the west line of Lot 103, which is a requisite finding for adverse possession. We conclude that the doctrine of acquiescence rather than adverse possession applies to this case because the occupation of the property east of the half-acre mark by the owners of 255 Center Street was not hostile to the wishes of the owners of 229 Center Street; however, the trial court's discussion of adverse possession is harmless in light of its conclusion that the boundary was set by acquiescence. Any error that the trial court may have made concerning its findings that the boundary was set by agreement in 1867 and that in 1939 Mabel McGregor abandoned any claim to property west of the line alleged by appellees is also harmless because it correctly determined that the boundary was set by acquiescence. Because the trial court did not err by concluding that the boundary between 255 and 229 Center Street was 174.35 feet east of the west line of Lot 103, appellants' first five assignments of error have no merit.
In appellants' sixth assignment of error, they allege that the trial court erred by admitting the affidavit of Mabel McGregor into evidence. In their seventh assignment of error, they allege that the trial court abused its discretion by denying their motion to withdraw or amend admissions. Evidence other than Mabel McGregor's affidavit and appellants' admissions was adequate to support the trial court's conclusion that the boundary was set by acquiescence. Therefore, appellants were not prejudiced by the admission of Mabel McGregor's affidavit. Because the trial court relied on evidence other than appellants' admissions to support its conclusion that the boundary was set by acquiescence, we do not need to address whether it abused its discretion by refusing to permit appellants to withdraw or amend them.
For the foregoing reasons, the judgment of the Geauga County Court of Common Pleas is affirmed.
 _______________________________ JUDGE ROBERT A. NADER
FORD, P.J., CACIOPPO, J., Ret., Ninth Appellate District, sitting by assignment, concur.