Laura A. Ross and Flora S. Ross, Appellants, v. J. D. Ferree and T. E. Muir.

**Estoppel.** In purchasing a lot, plaintiffs did not and could not with safety rely on the plat. They did rely on the representation of the defendant, owner of an adjoining lot, as to the boundary line between the lots, and defendant knew of such reliance. He made a good faith mistake in pointing out the line. Plaintiffs made valuable improvements accordingly without suspicion that it was not the true line. After defendant became suspicious a mistake had been made, he still permitted plaintiffs to complete the improvement. *Held,* defendant is estopped to assert the true line.

*Appeal from Wapello District Court.*—Hon. W. I. Babb, Judge.

Friday, October 11, 1895.

Action in equity to enjoin the defendants from interfering with the plaintiff's possession of a small strip of ground off of the south side of lot 3 in Ferree & Muir's addition to the city of Ottumwa, and for decree declaring the plaintiffs to be the owners of said strip of land. Defendants answered, denying plaintiffs' right to the possession of said strip of land, or to be quieted in the title thereto. Defendant J. D. Ferree, by way of cross bill, alleges that he is the owner of said lot 3, including said strip of land, that he has been damaged by reason of plaintiffs' possession of said strip, and asks to be quieted in his title, and to recover one hundred dollars damages. The court found that J. D. Ferree is the sole owner of said lot 3, and the only party defendant in interest. Decree was entered in favor of said defendant Ferree, enjoining the plaintiffs as prayed, and for eighty-five dollars damages. Plaintiffs appeal.—*Reversed.*

*McElroy & Heindel* for appellants.

*W. A. Work* for appellees.

Given, C. J.—I. The following facts, out of which this contention grows, appear without question, or are fairly established by the evidence:

On November 7, 1891, the defendants, J. D. Ferree and T. E. Muir, executed and acknowledged a plat of their subdivision of certain lands owned by them, as an addition to the city of Ottumwa. This plat was not filed for record until April 19, 1892. The following is a copy of the plat, as executed and recorded, except as to the two dotted lines:

At the time the subdivision was made, only the outer boundaries were marked by stakes. On April 12 and 15, 1892, stakes were set, marking the interior corners of lots. Prior thereto, defendants had sold fifteen feet off the northeast side of lot 5, and twenty-five feet off the southwest side of lot 6, to a Mr. Cram, and the balance of lot 6 to a Mr. Holt. The dotted

lines indicate the parts of lots 5 and 6 sold to Mr. Cram. At some time a stake was set in the south end of a pile of bricks at the northwest corner of the land sold to Cram, which stake was six feet four inches northeast of the northeast corner of lot 4. On November 24, 1891, the defendants contracted said lot 4 to Dr. Philpott, for a consideration of one thousand dollars, two hundred dollars of which were paid; the remainder to be paid, with interest, at a future date. About the sixth of April, 1892, the plaintiffs and defendant Muir conferred together as to the plaintiffs' purchasing lot 5. Plaintiffs preferring lot 4, and Dr. Philpott being willing to sell that lot at one thousand four hundred dollars, and to take lot, 5 on terms proposed by the defendants, it was so agreed among the parties. On April 18th (the plaintiffs, defendants, and Dr. Philpott being present) the plaintiffs paid the one thousand four hundred dollars, less an amount retained as indemnity against a certain paving tax, and the defendants executed and delivered to the plaintiffs a deed for said lot 4. The amount paid was applied in satisfaction of the eight hundred dollars and interest due to plaintiffs for lot 4 from Dr. Philpott, and the balance was placed to the doctor's credit on his purchase of lot 5. The first of September, 1892, the plaintiffs proceeded to improve their lot 4 by grading the same and erecting a valuable dwelling thereon. In grading and in locating their dwelling the plaintiffs took the stake at the northwest corner of Mr. Cram's part of lot 6 as the northeast corner of lot 4, and located their dwelling accordingly. There is no question but that in grading, the plaintiffs cut into lot 3, and that the house is so located that parts thereof are upon lot 3. On July 13, 1892, defendant Muir conveyed his interest in lot 3 to the defendant Ferree, who has ever since been the sole owner thereof. Plaintiffs do not claim to have purchased any part of lot 3, and concede that they

graded and located their house to a line running from the northwest corner of Mr. Cram's part of lot 6 to the northwest corner of lot 4, and have ever since occupied that part of lot 3. Their contention is that by reason of the facts the defendants are estopped from now denying their right to hold and occupy said part of lot 3.

II. The law of estoppel is so well understood that we need not cite authorities at length. "Estoppels must be certain to every intent, for no one should be denied setting up the truth unless it is in plain and clear contradiction of his former acts and declarations." *Hubbard v. Insurance Co.*, 33 Iowa, 325. "Where one, in honest error, asserts that which is not true, and does so for the purpose of influencing another, who, in good faith, trusts to and acts upon it, he that made the mistake shall not correct it for his own benefit, and to the injury of the party who was deceived by his assertions." *Smith v. Cramer*, 39 Iowa, 413. "A party is estopped from contradicting his own representations, on the strength of which another has acted, even where such representations were made in good faith, and in ignorance of the facts." *Sweezey v. Collins*, 40 Iowa, 540. In the light of these rules, we now inquire whether, under the facts, the defendant Ferree is estopped from now denying the plaintiffs' right to hold and occupy to the line to which they graded and built.

It will be observed that the plat was not recorded until after plaintiffs made their purchase, and the deed was executed to them. Therefore plaintiffs could not have relied upon the records in determining the boundaries of lot 4, in making their purchase and accepting their deed. It will also be observed that the plat, as recorded, did not correspond with the boundary marks placed upon the surface of the ground, in that it did not show the lines of Mr. Cram's purchase, nor call for a stake at his northwest corner. It is evident that the

plaintiffs did not rely upon the plat, in ascertaining the boundaries of their lot, and it is probable that, if they had, they would have been deceived by the fact that the stakes upon the ground did not correspond with the lines shown in the plat. There is some conflict in the evidence as to what the defendants did in the way of pointing out the boundaries of lot 4 to the plaintiffs. We are satisfied, however, that at all times from about April 6, when the lots were first shown to the plaint-iffs, until after the dwelling was erected and partially completed, the defendants did, in good faith, but mis-takenly, represent to the plaintiffs and their contract-ors the Cram-Holt corner as the northeast corner of lot 4. Plaintiffs evidently relied upon the representations of the defendants as to the boundaries of the lot, and the defendants must have so known, because of the facts concerning the plat, and of their being called upon to point out the north line of the lot at the time the grading was begun, and also at the time the location for the house was staked out. These lots are upon a hill-side, lot 3 being below lot 4. Consequently, in grad-ing as plaintiffs desired, it was necessary to cut an embankment along the line between lots 3 and 4. Defendant Ferree pointed out the line to which the grading was done. At one time he complained that they were cutting beyond that line, whereupon, as the witness says, they "stepped down" to the line pointed out. As the grading progressed, Mr. Ferree com-plained that they were cutting too deep, and not leaving sufficient slant in the bank to prevent caving. As the work progressed, he began to express suspicions that plaintiffs were over on lot 3. He said: "I don't know how much they had come over on my land. It was only guesswork. My impression was that they were over on me two feet." He further states that when they were digging the cellar he complained to plaintiffs that they were digging too deep, and says:.

"I afterwards came to the conclusion that they were cutting on my land. That was at the time they had the joists on the main foundation." One witness testifies that, at the time the stakes were set for the building, Mr. Ferree claimed that the cornice of the north gable would project on his line, and that in consequence the projection, which was to be sixteen inches, was reduced to six or eight inches. On September 19, 1892, the defendant Ferree served a written notice on the plaintiffs, as follows: "Ottumwa, Iowa, Sept. 19, 1892. To Flora and Laura A. Ross: Notice. In addition to the protest made to you in person, in presence of your mother, September 8, 1892, and herein renewed, that in the cut and excavation made by you on line between your lot (No. 4) and the lot (No. 3) owned by me, I earnestly protest against, and I notify you that I will in no way be liable or responsible for any damage that may result to you or your property from, sliding off or caving in of dirt from the abrupt bank you have made by said cut on the line between our lots, and that I will furthermore hold you accountable for any damage that may occur by reason of said cut and excavation made. I further notify you that you must not encroach or build your foundation walls or any part of your buildings thereon, to extend over the line between the lot No. 4, owned by you, and lot No. 3, owned by me. I have called your contractor's attention to this matter before and since the wall has been commenced, and have protested against said encroachment, which I feel confident is being made. One of the mechanics suggested that the cornice should be cut or shortened up. That is a matter for you and them to arrange. It must not extend over the line, and I notify you in time, that you may look after it. J. D. Ferree." It does not appear that Mr. Ferree had, at any time prior to the service of this notice, asserted more than a mere suspicion or belief that the plaintiffs were working beyond

the true line; and it will be observed that in this notice he does not so assert positively, but says that he feels confident they are encroaching upon his lot. He does not complain that the grading had been carried beyond the true line, but notifies the plaintiffs that he will not be responsible for injury to their property by "caving in of dirt from the abrupt bank," and will hold them responsible for any damage by reason of the cut.

We will not refer to the evidence further, but say that, in our opinion, it fully establishes the following facts: That, in making their purchase and improve-ments, plaintiffs did not and could not with safety have relied upon the plat alone; that they did rely solely upon the representations of the defendants as to the boundary lines of the lot, not only in making the pur-chase, but in grading, and locating their house. That the defendants, and each of them, knowing that the plaintiffs so relied upon their representations, did, in good faith, and believing the same to be correct, errone-ously point out the Cram-Holt corner as the northeast corner of lot 4, and that the plaintiffs, relying thereon, made their improvements to conform to that line. That not even a suspicion as to the mistake was suggested to the plaintiffs, until the improvements were well under way, and that, after defendant Ferree did come to question the correctness of the line he had pointed out, he failed to take any steps to ascertain the correct line, but permitted the plaintiffs to go on and complete their building on the faith of his representations. Mr. Ferree does not appear to have become entirely con-vinced of his mistake in pointing out the line until a few days before the commencement of this suit,—May 12, 1893,—when he served a notice upon the plaintiffs that they had constructed their house so that the same covered a part of lot 3, and demanding of them that they remove the same. We think the facts bring the case clearly within the rule of estoppel which we have

stated above.   It is, we think, "certain to every intent"
that plaintiffs made their improvements relying upon
the representations of the defendants as to the bound-
ary line, and, although that representation was an hon-
est error, the defendant should not now be permitted to
correct it for his own benefit, and to the injury of the
plaintiffs, who were misled by it.   Our conclusion is
that the decree of the district court must be reversed,
and a decree entered in favor of the plaintiffs as prayed.
—*Reversed.*