MARY BOLTZ, Appellant, v. NICHOLAS COLSCH, Appellee.

Actions: AMENDMENT: EQUITY TRIAL. A law action, which, by 1 amendment is converted into one to quiet title, even after a jury has been impaneled, should be transferred to the equity side of the docket and tried to the court.

Boundaries: ACQUIESCENCE: EVIDENCE. Where a division fence as 2 originally built was not intended as marking the true boundary line, nor so treated by the parties thereafter, the doctrine of acquiescence does not apply.

Evidence held insufficient to show acquiescence.

Adverse possession: EVIDENCE. To create a title by adverse possession 3 session there must have been an uninterrupted, exclusively hostile possession, with intent to claim up to a certain line, no matter where the true line may be.

*Appeal from Allamakee District Court.*— HON. L. E. FELLOWS, Judge.

FRIDAY, DECEMBER 14, 1906.

REHEARING DENIED, MONDAY, MAY 20, 1907.

THIS is a controversy over the boundary line between plaintiff's and defendant's lands. The trial court held with defendant, and plaintiff appeals.— *Affirmed.*

*J. P. Conway,* for appellant.

*H. E. Taylor* and *W. S. Hart,* for appellee.

DEEMER, J.— The action was originally brought to settle the boundary line between lots 5 and 6 in section 28, township 100 N., range 4 W., in Allamakee county; plaintiff being the owner of lot 5, and defendant of lot 6. Thereafter plaintiff filed an amendment converting the action into one to quiet her title to a strip between the two lots which

is in dispute. Plaintiff claims that a certain line between the two lots has been established by acquiescence and adverse possession, while defendant denies this, and says that the true line is marked by a fence recently erected by him. Lot 5 adjoins lot 6 on the north, and the property in dispute is a tract running east and west between the two lots, sixty-seven links wide at one end and ninety at the other. The testimony satisfactorily shows that the true line is where defendant now claims it to be and where he built a fence in the year 1902. But plaintiff insists that another line south of that has been established by acquiescence and adverse possession, and that no matter where the true line is she is entitle to have the one she claims established and her title down to that quieted, by reason of the facts to which we shall presently refer; relying upon the doctrine announced in *Miller v. Mills County,* 111 Iowa, 654, and other like cases.

I. Before going to the merits we shall settle a matter of practice. After a jury had been impaneled, plaintiff filed the amendment to her petition asking that title be quieted in her. In view of the allegations and prayer of the original petition, it is doubtful if the action was triable to a jury; but however this may be, an action to quiet title is purely of equitable cognizance. Recognizing this rule, defendant, after the filing of the amendment, moved to transfer the case to the equity calendar for trial to the court. This motion was sustained, and in this there was no error. See Code, section 4227.

1. ACTIONS: amendment: equity trial.

II. In the year 1866 plaintiff's father, Nicholas Temple, purchased from one Weymiller the two lots 5 and 6, and at that time there was a rail fence along or near the line which plaintiff now claims is the true one. This fence is called a " pasture fence," and was used as such both by Temple and Weymiller. Some time after Temple's purchase, he sold lot 6 to one Jacob Prinz, his stepson, and in 1873 he sold lot 5 to the plaintiff. Jacob Prinz used and

2. BOUNDARIES: acquiescence: evidence.

lot 5 to the plaintiff. Jacob Prinz used and occupied lot 6 down to the year 1893 when he sold it with other land to the defendant Colsch. It is claimed that this rail fence was repaired from time to time, increased in height, and was finally, in the year 1875, replaced by a wire fence attached to certain trees and posts upon practically the same line as the old rail fence. Both lots border upon the Iowa river, and both are subject to overflow. Because of this, the fence to which we have already referred was frequently washed away, and in the year 1902, when defendant constructed the fence upon the line where he now claims it to be, the wire fence was nearly all gone. After the floods which washed away the fences occurred, the fence was not always replaced upon the same line. The wires were attached to convenient trees, and the fence was never a straight one, and since defendant's purchase he has generally repaired the fence after its destruction by floods. There is no showing that either Temple or his grantor ever maintained the rail fence as marking the boundary line between lots 5 and 6. After the sales by Temple it may be that his grantees, or some of them, thought the fence was upon the true line, but it appears from the testimony that defendant's grantor Prinz did not regard the old fence as being upon the true line, nor did defendant after his purchase. Plaintiff herself, for the purpose of finding the line after her purchase in order that she might grub down to it, had a party stake it out, and these stakes were set near where the line is as now marked by defendant's fence. She (plaintiff) thereupon grubbed down to the line marked by these stakes, and no farther. In the year 1902 the wire fence was washed out and defendant, wishing to rebuild it upon the true line, proposed to plaintiff that they have the line surveyed. This proposition was accepted, and plaintiff sent for the county surveyor and he, the county surveyor, ran the line establishing it where defendant now contends it should be. This being satisfactory to plaintiff, defendant built his fence upon this line. Thereafter and in March of the year 1904, plaintiff com-

menced this action in which she complained of the fence as a nuisance, and asked that her title to the land between the old and the new fences be established in her.

The testimony as to the location of the old fences is not very satisfactory. They manifestly did not run straight, but varied from one rod to sixty or more feet from the true line, and it is very difficult, if not impossible, now to follow the line of the old fences as claimed by plaintiff. If plaintiff is to recover at all it must be because of acquiescence of the parties in the old fences as being upon the true line, or because of her adverse possession of the strip in dispute. It is manifest that neither defendant nor his grantor recognized the old fence as being on the true line, and it quite satisfactorily appears that plaintiff did not so regard it. She (plaintiff) had stakes set before she did her grubbing, and these were where the line now is as claimed by defendant. In the year 1899 defendant grubbed out the tract in dispute, and hauled away the logs cut therefrom, plaintiff's husband, who acted for her, assisting him in loading some of the logs. Plaintiff agreed to the resurvey made by the county surveyor, and did not object to the fence built by defendant until long after it had been erected. Under these facts there is no room for the doctrine of acquiescence. There is no showing that the fence as originally built was intended as a boundary one, and the parties now in interest have never so treated it. The case in this respect is ruled by *Kitchen v. Chantland,* 130 Iowa, 618; *Palmer v. Osborne,* 115 Iowa, 715, and other like cases. See, also, *Kellogg v. Smith,* 7 Cush. (Mass.) 375, for a valuable discussion of this matter.

III. The doctrine of adverse possession as distinguished from acquiesence does not apply for several reasons. (1) Plaintiff has not been in the exclusive hostile possession of the strip in dispute. She has recognized by her acts and conduct that the old fence did not mark the true line. (2) She does not

3. ADVERSE POSSES-
SION: evi-
dence.

show an intent to claim to the old fence no matter where the true line may be. (3) Her possession, such as she has had, has been interrupted and was so far as this record shows nothing more than permissive. The rule of *Grube v. Wells,* 34 Iowa, 148, in so far as it applies strictly to the doctrine of adverse possession has never been departed from. Nor should it be, for it is essential to adverse possession that there be an occupancy with intent to hold in hostility to the true owner. The intent or *quo animo* of the possessor must be shown. See, as sustaining these conclusions, *Erikson v. Slate,* 130 Iowa, 187; *Lawrence v. Washburn,* 119 Iowa, 109; *Klinkner v. Schmidt,* 114 Iowa, 695.

The decree seems to be correct, and it is *affirmed.*