MARY M. HERRICK, Appellee, v. MARY E. MOORE, Appellant.
CITY OF OTTUMWA, Appellee, v. MARY E. MOORE,
Appellant.

**HIGHWAYS:** Estoppel Against Public in re Obstructions.   Estop-
1   pels against the public to demand the removal of valuable build-
ings or other like improvements which are within the public
highways, rest essentially on the fact of prior express or implied
*consent* by the public authorities to the erection of such im-
provements.   Ten years' maintenance of such improvements (in
analogy to the statute of limitations) *ipso facto* establishes such
consent.   In the absence of such ten years' maintenance, the
owner must show that he had such consent *when the improve-
ments were erected.*

**ADVERSE POSSESSION:** Right Equal to Fee.   Adverse possession
2   for the full period of ten years matures a right equal to a fee.

**LIMITATION OF ACTIONS:** Non-Applicability to Public.   The
3   statute of limitations may not be invoked against the public.

**BOUNDARIES:** Acquiescence—Non-Applicability to Public.   The
4   doctrine of acquiescence may not be invoked against the public.

*Appeal from Wapello District Court.*—C. W. VERMILION,
Judge.

DECEMBER 14, 1918.

REHEARING DENIED MARCH 20, 1919.

THIS case involves the right of the city to enjoin the
defendant from the use of a certain strip of land claimed
to have been occupied by the defendant for ten years.   The
strip occupied was a part of the street.   The defendant
claimed that she had acquired some right to it by adverse
possession, acquiescence, or estoppel.   Decree for the plain-
tiff in the court below.   Defendant appeals.—*Affirmed.*

A. W. *Enoch,* for appellant.

J. J. *Smith,* M. C. *Gilmore,* and J. A. *Lowenberg,* for appellees.

GAYNOR, J.—The plaintiff, Mary M. Herrick, and the defendant, Mary E. Moore, occupy adjoining properties in the city of Ottumwa. Each faces on what is known as Market Street. This street runs northeast and southwest; but, for the purposes of this case, it will be considered as running north and south. Gara Street runs east and west, and crosses Market Street at right angles. Defendant's property is at the intersection of Market and Gara Streets, east of Market Street and north of Gara. Both tracts are in what is known in the plat as Lot 11. Lot 11, on Market Street, is 131¾ feet, north and south; on Gara Street, 65⅓ feet east and west. Defendant owns the south 79 feet of Lot 11, which, described by metes and bounds, commences at the corner of the lot on Market and Gara Streets, runs north on Market Street 79 feet, and east on Gara Street 65⅓ feet. The plaintiff, Mrs. Mary M. Herrick, owns that portion of Lot 11 lying north of defendant's property.

1. HIGHWAYS: estoppel against public *in re* obstructions.

Two actions are submitted here, one by Mary M. Herrick, as adjoining property owner, alleging a special interest in the matter in controversy; the other by the city. Both are brought to enjoin the defendant, Mary E. Moore, from erecting, as a part of an apartment house, then under construction upon the ground owned by her, a porch which, it is alleged, extends over the lot line into Market Street; and the relief asked is that she be enjoined from so doing, and also that she be required to remove the same from the street. Mary M. Herrick's action was commenced first, followed by an action on the part of the city, both seeking the same relief.

At the time the action was commenced, the porch was then under construction. No temporary writ of injunction was asked, and the defendant, notwithstanding the commencement of the actions against her, proceeded to the completion of her building as planned. A decree was entered as prayed, in favor of both plaintiffs, requiring the defendant, Mary E. Moore, to remove all of the first story of her porch, or part of her building, which extends outside of her lot line and encroaches upon Market Street, within six months of the entry of the decree. She was further perpetually enjoined and restrained from maintaining any part of the first story of her building on any part of Market Street on and after six months from that date. From this the defendant, Mary E. Moore, appeals.

Although there is much said by counsel for defendant in argument touching the sufficiency of the evidence to show the dividing line between the street and the defendant's property, we are satisfied, from an examination of the record, that Market Street, as platted and dedicated, was 66 feet wide, opposite defendant's property, and that she has passed the east line of this street in the construction of her building, and that the building, if permitted to remain, will extend into the street as dedicated and platted.

Defendant, Mary E. Moore, purchased in 1911 the lot which she now occupies, and by her purchase acquired the south 79 feet of Lot 11. This would cover territory limited as follows: Commencing at the corner of Lot 11, at the intersection of Market Street and Gara Street, thence north along the east side of Market Street 79 feet, and on the north side of Gara Street, from the same point, 65⅓ feet. This is all she purchased. This is all that her grantors down the line, so far as this record shows, claimed to own under their deeds of conveyance. One who takes possession of real property is presumed to take it

under the right acquired through the instrument which creates in him the right of entry. He is not presumed to intend to take possession of more territory than is included in the boundaries fixed in the instrument under which he enters. When a territory is platted into lots, and sold, as this was, by lot numbers, the party purchasing takes only so much territory as is within the limits of the lot as platted; if by metes and bounds, then within the limits as fixed by the metes and bounds in his conveyance. Therefore, at the outset, we must assume that, after this lot was platted and was sold by number, the purchasers intended to take, and took, only so much territory as was within the limits of the lot as platted. It appears, so far as this record shows, that all conveyances preceding and including the conveyance to the defendant were only of the south 79 feet of Lot 11. Therefore, if more is claimed, it must be on some theory not evidenced by the conveyance. It must be a claim to territory not conveyed, and to which the party has no right, under his conveyance. Necessarily, it must involve the taking of the property of others, and an enlargement of the territory included in the instrument of conveyance. When one seeks to enlarge the territory granted,

2. ADVERSE POSSESSION: right equal to fee. he seeks the invasion of another's right, and he must have some good, legal ground for the invasion, or he must show that the invasion, though originally wrongful, has been continued or acquiesced in for such a length of time by those whose rights have been invaded that the courts will presume that there was a grant of right of invasion, or that the invasion was made and the possession held under such circumstances that it would be inequitable now to deny the right. Or he may show that the one whose property has been invaded has acquiesced in the invasion by consenting or agreeing to a dividing line beyond the limits of the invader's right, for such a length of time that the courts will assume that the

line so agreed upon is the true line—the true dividing line—between the parties, and hence no invasion.

To justify the invasion, therefore, proof is called for either to show adverse possession for such a length of time that the court will presume a grant, or that the adverse party, if he had any title during this period of time, would have asserted it against the person in possession. This adverse possession is in the nature of a rule of repose, and denies the right to the complainant to say that he had any such right, after he has allowed the other party to remain in open, notorious, and visible possession, under claim of right or color of title, for ten years. Thus the presumption would seem to be either that the person in possession had a grant, some time, of right to the possession, or that the other party claiming against him never had any right; or if he had, he would have asserted it earlier. Whichever way we treat this rule of adverse possession, it has finally resolved itself into this: That the party who has held the adverse possession for the statutory period stands with some sort of indisputable right to it which is equivalent to a grant in fee.

The rule of acquiescence also is a rule of repose, and means simply that, where adjoining property owners agree to a line as the dividing line between their property, and this agreement has stood unchallenged for ten years, the line so agreed upon becomes, as a matter of law, the true dividing line, though, as a matter of fact, under governmental subdivisions or metes and bounds, it is made manifest that one has invaded the rights of the other. It says simply to the complaining party: "You have agreed to this line, and it has stood for ten years unchallenged. You are now estopped to claim that any other is the true line."

The theory of estoppel is that, where one has invaded the right of another, thinking he is within his own right, and that invasion is known to the other, and the other

stands by and sees him make valuable improvements upon
the invaded territory, under the supposition that it is a
part of the possessions of the invader, equity will thereafter
deny to the invaded the right to object to the invasion, and
will not grant his prayer to have the improvements destroy-
ed or removed, when such act would be greatly to the prej-
udice of the invader. This estoppel comes pretty near to
the rule of adverse possession, though, by its application,
one may be estopped though the ten years essential to ad-
verse possession have not expired.

As we have said before, the strip of land in controversy
was never a part of Lot 11, but was, when the plat was
made and the land dedicated, a part of Market Street. It
is true that the plat does not show the width of Market
Street, but the dimensions of the territory included in the
plat and on the opposite side of Market Street are given.
The street is simply the space between. This space is as-
certainable by any competent surveyor, and was ascertain-
ed in this case. So we say that the street was 66 feet wide,
and this strip of land is in the street and the city is entitled
to it, unless the defendant has sustained her right to it by
the defense which she has interposed.

Defendant bases her right to the territory on three
grounds:

1st. Adverse possession for the statutory period.

2d. That the city has acquiesced in the line as the east
line of Market Street, over which she has not passed in the
construction of this building.

3d. That the city is now estopped to require her to
remove her porch from the line, even though she has not
acquired right to the territory, because of the facts appear-
ing in this case.

As to the first two propositions, we have to say that,
as against the public, it has been repeatedly held by this
court that adverse possession, as generally recognized and

enforced, cannot be invoked against a mu-

3. LIMITATION OF ACTIONS: non-applicability to public. nicipality. We need not discuss the basis of this holding. It has been clearly asserted in more than one case by this court. In *Kuehl v. Town of Bettendorf*, 179 Iowa 1, this court said:

"Plaintiff claims that he is entitled to the strip by adverse possession, and by reason of defendant's acquiescence in the line as marked by the fence. One trouble with this contention is that the statute of limitations does not run against the town, or against the public; and the doctrine of acquiescence, as between individuals, does not apply when one of the parties is a governmental agency and the subject-matter is one in which the public has a vested interest."

In *Johnson v. City of Shenandoah*, 153 Iowa 493, this court said:

4. BOUNDARIES: acquiescence: non-applicability to public. "The rule now unquestionably is that the doctrine of adverse possession does not apply to municipalities or other bodies exercising governmental functions, for the reason that the statute of limitations does not run against the state or any of its instrumentalities so as to prevent the exercise of its proper governmental functions. * * * Again, we are now committed to the proposition that the lines and boundaries of highways, streets, and alleys between the public and private owners cannot be established by acquiescence, for the reason, among others, that no one is authorized to represent the state or its instrumentalities in making any such agreements, or to acquiesce in a given line."

Since neither adverse possession nor acquiescence is available to the defendant, what has she in her plea of estoppel that can be successfully invoked in her behalf?

The home, as originally constructed, was wholly with-

in the limits of the lot as platted. However, more than ten years before this action was begun, a porch was built, by the then owner, on the Market Street side, extending over the lot line into Market Street about 18 inches. This porch was torn down in 1913, and a second porch built in its place, extending about 3 feet farther into the street. In the winter of 1915 and '16, the house was partially destroyed by fire, though the porch was not consumed. In the spring of 1916, it was torn down, and the erection of the porch in controversy was begun, in connection with the rebuilding of the house. This porch was 8 feet 2 inches wide, and extended over the lot line. The house to which this porch was attached, as reconstructed, was, therefore, about 5 feet 10 inches from the street. Early in the spring of 1916, after the frame was up and the sides partially enclosed, a controversy arose between the defendant and the plaintiff, Mrs. Herrick, over the location of the porch, Mrs. Herrick claiming that it extended over the lot line into the street. Thereupon, Herrick caused a survey to be made, and the street line definitely determined and pointed out to the defendant, and the true line indicated to her by the surveyor upon the ground. Upon this showing, the further construction of the porch was stopped by the defendant, Mrs. Moore, and not resumed until after notice of suit was served upon her. Before or about the time the building of the porch was renewed, the city served notice on the defendant, requiring her to remove the obstruction from the street, and soon thereafter, the suit here presented was commenced by the city.

It will be seen, therefore, that, before the defendant had completed her structure, she had notice of the true lot line, and that she was extending her building over the line and into the street, and that the city denied her right to do so, and would contest her right to do so. She went on, however, and built the porch.

In *Bell v. City of Burlington,* 68 Iowa 296, the holding is only that, though the street, as originally laid out, was 90 feet wide, yet, as the city had, by its conduct, indicated a purpose to occupy 60 feet only, and abutting property owners, relying thereon, had occupied up to the street line, as used, for 30 years, and had made valuable improvements, it would be inequitable to allow the city to claim and occupy and use more than it had indicated its purpose to accept and use. This on the ground that to permit the city to do so would work a great wrong to the property owner, who relied upon the conduct of the city, and had built valuable improvements upon this disputed strip. The same holding is found in *Orr v. O'Brien,* 77 Iowa 253, in which it is said, in substance, that, relying on the line as created, the plaintiff had made valuable improvements, so located that, if the road be moved, these valuable improvements would be seriously impaired.

In *Bridges v. Incorporated Town of Grand View,* 158 Iowa 402, it was said:

"While an estoppel will not be found from the erection of fences or the planting of trees and shrubs alone, it may be established from the erection of substantial improvements by the owner of the lot with reference to a given line, with the knowledge and acquiescence of the town."

It will be noted in this case that the element of time is not considered. The case is based upon the thought that, *before the buildings were erected,* the plaintiff city had knowledge that it was about to be erected, and of the line on which it was to be erected, and acquiesced in its building, and therefore ought not to be permitted to insist upon the removal, where the effect of such removal would be to greatly prejudice the builder. It will be noted that it says:

"Her houses were built, porches erected, sidewalks laid, fences constructed, and general improvements made

with reference to a given line, which corresponds with that on the block to the north, *with the knowledge and acquiescence of the town and its officials."*

It is apparent that, if the city, like an individual, knows that another is about to build on a certain line, knows that the line upon which the structure is to be erected is over the true line, does something active to indicate that it consents to the contemplated act, and acquiesces in that line as the true line for the purposes of the structure, and then a structure is erected on that line, in good faith, relying upon the consent of the city, the city cannot afterwards, by any proceedings, order the removal of the building, when the effect of it would be greatly to the prejudice of the one who, in good faith, relied upon the act of the city in making his improvements.

Time is considered in this estoppel only in analogy to the statute of limitations. The estoppel is not created by time. The estoppel is created by the consent and acquiescence of the city in the doing of the thing complained of, the undoing of which would greatly prejudice the doer, and the ten years is applied only as a basis for a conclusive presumption that the city did so agree at the time of the erection of the improvements. The ten-year period brings a conclusive presumption that the city consented to the invasion before or at the time of the invasion. It makes the rule of right the same as it is between individuals. That is, should a property owner see his neighbor, in good faith, assume a line to be the true line, and act upon that assumption, and build valuable improvements, and he makes no objection, and consents to the neighbor's so doing, the law steps in and says:

"You should have spoken when you saw the act being done, which would not have been done except for your conduct. It is apparent, if you now are permitted to speak, a great wrong will be done to the other, who, relying upon

your consent or acquiescence, has done a thing the undoing of which, if he were required to undo it now, would work great hardship and injury to him. You should have spoken when you knew the act was to be done, and now you must forever after hold your peace. You are estopped."

The whole doctrine of estoppel, as applied to cases like this, rests upon the thought that the city, through its proper officers, or those authorized to act for it, has consented to the doing of the act of which it now complains, and this consent is conclusively presumed after ten years' silence. The estoppel rests on the consent, or the presumption of consent, and not upon the statute of limitations. This doctrine is recognized in *Johnson v. City of Shenandoah,* 153 Iowa 493, 495.

It will be noted that the building, as originally constructed, was all upon the lot as platted. The first building did not extend over 18 inches beyond the lot line. The second building and the porch in question have not been where the defendant now claims a right to put them, for the statutory period. There is no evidence that the city has consented to the erection of this porch over the lot line at the point and to the extent to which the defendant now is asserting her right, and time has not passed sufficient to create a conclusive presumption that the city did so consent.

Upon the whole record, we think the court was right, and the judgment is, therefore,—*Affirmed as to both cases.*

PRESTON, C. J., WEAVER and STEVENS, JJ., concur.