CLARENCE STONE, Appellee, v. W. H. RICHARDSON, Appellant.

MARCH 6, 1928.

REHEARING DENIED JUNE 26, 1928.

*Burnstedt & Hemingway*, for appellant.

*F. J. Lund*, for appellee.

KINDIG, J.—Historically the facts are: Plaintiff appellee owned the north half of the northwest fractional quarter of Section 31, in Township 88, Range 24 west of the Fifth P. M., Hamilton County, while the south half of the same quarter section belonged to the defendant appellant.

Controversy arises over the east and west partition fence between the two properties. In 1904, ancient grantors of these parties then held title to the respective premises. Confusion arose concerning the proper place on which to build the "fence." Consequently, a Mr. Iliff was employed to make the survey for the entire section. After completing this project, corners were moved, and "fences" placed accordingly. From time to time thereafter, replacement was made of the structure, changing from the ordinary stock "fence" to one of the hog-tight style. These adjoining fields were cultivated up to the "fence," which was

recognized by the individual adjacent owners as the true "division line." There were, in all, ten different persons holding this ground between the years 1904 and 1916. None of them ever complained that the "fence" was mislocated. Appellee purchased and took possession of the north tract of approximately 80 acres in 1920. He objected to appellant, a year or two thereafter, that the "fence" was not so situated as to give him all the "land he ought to have." Contained in this difference was a triangular strip of land 31 feet and 4 inches wide on the west end, extending back to nothing at the east side.

Then a conversation was had between appellant and appellee. What was said at that time and place is in dispute. Appellant claims that he told appellee to get a surveyor, if he was not satisfied, "and run the line out, and if the surveyor he got did not agree with Mr. Iliff, we would be right where we were when we started; and I would get another surveyor, and probably two of the surveyors could agree, and I would agree to stand by the line that two of the surveyors made." On the other hand, appellee's version thereof is that he told appellant the "fence" was not properly located, whereupon appellant, according to the appellee, said that the survey had been made years ago, and he supposed the "division" was correctly placed; but if not, and "I have got any of your land, I want you to have it, and if you have got any of my land, I want it." No written stipulation was entered into.

Disagreement appears in the record concerning whether or not the actual location of the "fence" throughout the years was strictly in accordance with the Iliff survey. Upon the conflicting evidence, the court found that it was not, and furthermore, that appellant had claimed ownership and possession up to the "Iliff line," rather than the "fence line." Hence, that tribunal fixed the new "boundaries" as prayed by appellee, and quieted the title in harmony therewith.

I. Code of 1924 contains the following sections, respectively:

"12293. When one or more owners of land, the corners and boundaries of which are lost, destroyed, or in dispute, desire to have the same established, they may bring an action in the district court of the county where such lost, destroyed, or disputed corners or boundaries, or part thereof, are situated,

against the owners of the other tracts which will be affected by the determination or establishment thereof, to have such corners or boundaries ascertained and permanently established."

"12298. Either the plaintiff or defendant may, by proper plea; put in issue the fact that certain alleged boundaries or corners are the true ones, or that such have been recognized and acquiesced in by the parties or their grantors for a period of ten consecutive years, which issue may be tried before commission is appointed, in the discretion of the court."

"12306. If it is found that the boundaries and corners alleged to have been recognized and acquiesced in for ten years have been so recognized and acquiesced in, such recognized boundaries and corners shall be permanently established."

So in this case, the "acquiescence" defense was urged by appellant. Review of the evidence has but little, if any, conflict on the proposition that, for the period extending from 1904 to 1920, there were harmony and agreement concerning the "partition line" between these farms. Therefore, in order for the appellee to prevail, it is necessary that he show, through enforcible contract, estoppel, or adverse possession, that appellant is not entitled to the benefits of the present location.

II. Considering the three propositions in the order named, it is found that the action of the trial court cannot be sustained. Without deciding whether appellee's or appellant's conclusions concerning the conversations are correct, it is enough to say that, at most, an oral understanding resulted. That is not sufficient. We said in *Fredricksen v. Bierent*, 154 Iowa 34:

"But such an agreement [oral], even if shown, unless followed by possession or improvement of the property with reference to the new line, with the acquiescence or agreement of the plaintiff, would not affect the old line as established by acquiescence and adverse possession. * * * Something more than an oral agreement is necessary to change a boundary already established by acquiescence or adverse possession. [*Uker v. Thieman*, 132 Iowa 79; *Kitchen v. Chantland*, 130 Iowa 618; *Bevering v. Smith*, 121 Iowa 607, 615]."

See, also, *Cheshire v. McCoy & Henry*, 205 Iowa 474.

III. Adverse possession does not sufficiently appear in the record before us to permit appellee to recover thereon. Adverse-

ness is lacking. Nothing is manifest anywhere to show, or even indicate, that the "respective holders" up to 1920 were claiming any territory of the other beyond the "fence." *Brown v. Bergman*, 204 Iowa 1006, uses this apt language:

"Neither of them [respective owners] made claim to any land beyond the fence. The adjoining owners repaired and maintained the fence, each his own apportioned part of it."

Likewise, in the case at bar, the present litigants, or their grantors, built and rebuilt "fences" on the "line."

IV. Estoppel has not been proven by appellee. Assuming that there was a mutual agreement to resurvey, that would not be conclusive, because thereunder the "fence" was not removed or possession taken, nor were improvements or expenditures made in reliance thereon. *Fredricksen v. Bierent*, supra. This court there declared:

"It is true that a new survey was had * * * . The new survey would not, of itself, establish the line. An express agreement to that effect would be necessary. But such an agreement, even if shown, unless followed by possession or improvement of the property with reference to the new line, with the acquiescence or agreement of the plaintiff, would not affect the old line as established by acquiescence and adverse possession."

See, also, *Cheshire v. McCoy & Henry*, supra.

V. But the trial court was of the opinion, and appellee now argues, that, due to the fact that the ancient "location" in 1904 was with reference to the "Iliff line," and the present "fence" has been placed somewhat apart therefrom, appellant's cause must fail. Further, it is claimed by appellee that appellant founded his right upon the "Iliff survey," and wanted no other or different "partition line." Reliance is made by appellee on the following authorities: *Kitchen v. Chantland*, supra; *Grube v. Wells*, 34 Iowa 148; *Hiatt v. Kirkpatrick*, 48 Iowa 78, 80; *Austin v. Baxter*, 189 Iowa 138; *Boltz v. Colsch*, 134 Iowa 480; *Miller v. Mills County*, 111 Iowa 654. Such authorities, however, do not bear out the theory advocated by appellee.

Testimony on the part of appellant was to the following effect:

"After the boundary line was established [in 1904], I maintained that that line was the line ever since, without regard to any errors that might be made in the survey."

Primarily, the question is—what "line" did the owners adopt as the "boundary?" Government or private surveys are not controlling. They have no intrinsic sacredness. Originally, the United States marked and staked the public lands in this territory, for the purpose of convenience in transferring the government's title to the homesteader or other purchaser. Manifestly, the object of individuals in employing an engineer in this regard is purely for personal accommodation. Previously, this rule was recognized in *Miller v. Mills County*, supra, wherein it was suggested:

"Reference is had to the government survey as pointing out the lines by which the lands described in the patents passed from the government, and by which they are ordinarily transferred by deeds. But if the coterminous owners have adopted another line as their division line, and have occupied up to it and recognized it as such for a period of ten years, there appears to be no reason for not regarding it as the true boundary line, notwithstanding it is not that fixed by the government survey."

Similarly, in the case at bar it is quite immaterial whether the "fence" was placed on the "Iliff line" or some other. Criterion is to be found rather in the truth that the adjoining owners "acquiesced" in the "boundary" between them for the statutory period, recognizing, as they did, that, for their purposes, that was the established landmark for separating their interests. Reasons for doing this are of little aid in solving the problem. Present in their minds may have been this or that thought, yet such was not controlling.

To put the idea in another way, it may elucidate. The parties before us established by "acquiescence" an actual, not a theoretical or imaginary, "line." Returning again to *Miller v. Mills County*, supra, this statement is found:

"The authorities quite generally hold that, in the absence of controlling circumstances, acquiescence in a division line, as-

sumed or established, accompanied by actual occupancy in accordance therewith by the adjoining owners for a period equal to that prescribed in the statute of limitations within which an entry may be barred, is conclusive evidence of such an agreement. The rule will be found perspicuously stated in *Sneed v. Osborn*, 25 Cal. 628: 'The acts of the parties may not amount to an agreement between them to locate the tract as surveyed, and it is unnecessary to consider them in that view; but do they not show an acquiescence by the parties in those lines between the tracts of land? If they do show such acquiescence, it will make no difference in the result, that they acted in *ignorance or under a mistake* as to the true northern line of the northwest quarter of the Harrison tract. [The italics are ours.] The authorities are abundant to the point that, when owners of adjoining lands have acquiesced for a considerable time in the location of a division line between their lands, although it may not be the true line according to the calls of the deeds, they are thereafter precluded from saying it is not the true line.' "

Again in *Brown v. Bergman*, supra, we had occasion to say:

"This is true [the principle of acquiescence] notwithstanding the statement of defendant in testimony that he intended to claim no more than his deed gave him."

Moreover, what the appellant really meant when he said that in 1904 a compact was entered into, placing the "fence" on the "Iliff survey," was that it should be located in its present position. That there is a difference between the "Iliff survey" and the actual location of the "division line" is not conclusively shown by the record. Nevertheless, no mistake exists as to what these landowners "acquiesced" in, and such relationship extended over a period greater than ten years, required by statute. Necessarily, then, the "true line," under the circumstances here revealed, is the present position of the "fence."

The judgment and decree of the district court must be, and hereby is, reversed.—*Reversed.*

STEVENS, C. J., and EVANS, FAVILLE, and WAGNER, JJ., concur.