EARL KRAFT et al., Appellees, v. FRED TENNIGKEIT, Appellant.

No. 40065.

April 14, 1930.

*L. Dee Mallonee,* for appellant.

*Charles S. White,* for appellees.

Evans, J.—The adverse parties own adjoining 40-acre tracts, separated by a division line 80 rods long, extending east and west. Defendant's tract lies to the south of the plaintiffs' tract. The defendant acquired his tract in 1905, and the plaintiffs, through their predecessor in title, John P. Kraft, acquired their tract in 1907. The present plaintiffs are the children and heirs at law of John P. Kraft, deceased, and have lived upon the north tract since its acquisition, in 1907.

At the time of the defendant's purchase, in 1905, and at the time of the plaintiffs' purchase, in 1907, a division fence was maintained between the two tracts, and had been maintained for many years. This fence has been maintained by the respective parties ever since. It is the claim of the plaintiffs that such fence, with all its renewals and repairings, has been maintained

on the same line occupied by it in 1907: whereas it is the contention of the defendant that, though the fence has been maintained during all these years, yet it has not been maintained upon the identical line; that, on the contrary, it has been rebuilt many times, on varying lines; and that it has gradually been pushed to the south, thereby encroaching upon the defendant's land to an extent varying from 3½ to 7 feet. It is upon this variation of the line, from time to time, that the defendant predicates his denial of acquiescence in any particular line marked by such division fence. It does appear that the Nishnabotna River flows southerly through both of these tracts of land, and crosses the division line at a point about 20 rods west of its east end; that this river has frequently overflowed, and carried away portions of the fence; that after such floods the fence has been renewed. The claim advanced by the defendant is that these renewals of the fence have been usually temporary, and without definite regard to location, and thereby the encroachment has been gradually accomplished. It appears further that only 15 or 20 rods of the fence have been thus affected by the floods. If the reconstruction of the fence upon this section after a flood, resulted at any time in a departure from its former line, that fact would at once be indicated by the remaining line of the fence, which had not been disturbed. Sixty rods of the fence extended west from the river. There is no claim by the defendant, or any witness, that he ever observed any deviation from a true line in this section of the fence. If, therefore, the fence was gradually pushed to the south, as contended by defendant, it must have been accomplished by moving the entire line of the fence, and not by replacing parts thereof after the destruction by a flood. It does appear that, shortly before the beginning of this suit (which was in 1921), the defendant moved to the north a section of the fence on the east side of the river. His action in this respect was the occasion for the present lawsuit, which was brought to enjoin his interference. At the time of the bringing of this suit, and ever since, the only deviation from a straight line that is apparent in the fence is that caused by the defendant on the east side of the river. By the decree of the trial court, the line was established as indicated by the 60 rods of fence on the west side of the river, such line being projected to the eastern boundary line of the tracts. The distance between the projecting line as fixed by the

court, and the fence line as fixed by the defendant on the east side of the river, is from 6 to 8 feet. It is apparent that the subject-matter of the controversy is exceedingly small.

The parties agree that they are presenting to us a purely fact case. They present no controversy over any question of law. The ultimate question of fact presented is whether the parties have mutually acquiesced in this fence line as maintained; or, if not, whether the plaintiffs have maintained the same by adverse possession against the defendant. The decree of the trial court found both acquiescence and adverse possession. The defendant argues that, under the evidence in this case, there is very little distinction as between the two grounds.

There is some room for the defendant's contention that he never acquiesced in the line. These parties have not been friendly neighbors. They had some litigation in 1915, which was terminated by dismissal without prejudice. That litigation involved this line. The defendant claimed then, as he claims now, that the true boundary line had been lost, and that it should be re-established by a commission, as provided by statute. He has never contended for any other particular line, except that the fence in its present location is farther south by a few feet than it was in 1905, when he bought his land. He does not claim that he ever observed a change in location of the fence at any particular time. He simply remembers that in 1905 the fence was located a few feet north of the line now occupied by it. In view of the state of the evidence in this record, we have little occasion to determine whether it was a case of acquiescence or a case of adverse possession. Counsel for the defendant so concedes. The plaintiffs have at all times claimed the line of the fence as a division line. They have in good faith occupied and farmed the land up to such line. The defendant has confined his occupancy up to that line, either willingly or unwillingly. If unwillingly, then the possession of the plaintiffs was adverse to him. *Dake v. Ward,* 168 Iowa 118.

On the question of the identity of the line on which the division fence was maintained, we think the weight of the evidence is with the plaintiffs. Only the defendant himself, as a witness, testifies otherwise. An analysis of his evidence discloses that his evidence is a mere conclusion, deduced by him from a process of reasoning predicated upon his recollection of

the actual location of the division line in 1891, 14 years before he acquired the land, and upon his further recollection of such line in 1905.

Our careful reading of the record satisfies us with the finding of the trial court.

The decree appealed from is, accordingly,—*Affirmed.*

MORLING, C. J., and FAVILLE, DE GRAFF, and KINDIG, JJ., concur.