Milissa Minear, Appellee, v. Keith Furnace Company et al., Appellants (and one other case).

Nos. 40909, 40918.

664

December 16, 1931.

A. J. Palas and Guy A. Miller, for appellants.

Walter F. Maley and I. H. Tomlinson, for appellee.

WAGNER, J.—The defendant Iowa National Bank has a mortgage upon the property of the Keith Furnace Company,

and the remaining defendants, to wit, Dorsey and Creston Coca Cola Company, are only interested by reason of a contract of purchase of a portion of the real estate owned by the Furnace Company. A determination of the rights as between the plaintiff and the Furnace Company will necessarily determine the rights of the remaining defendants. The plaintiff and the Furnace Company are adjoining lot owners, the plaintiff being the owner of property described as the West 57 feet of the East 117 feet of the West 2 acres of Lot 8, of the official plat of the South ½ of Section 1, Township 78, Range 24, now included in and forming a part of the City of Des Moines; and the defendant being the owner of the adjoining property, described as the West 57 feet of the East 174 feet of the West 2 acres of Lot 8, of the official plat of the South ½ of Section 1, Township 78, Range 24, now included in and forming a part of the City of Des Moines.

The Furnace Company has erected a two-story brick building upon its premises, approximately 150 feet long from north to south. The footings and foundation of this building were constructed late in the year 1921, and the building was erected the following spring. It is the contention of the plaintiff that the east foundation wall and the brick wall erected thereon encroach upon her property. It is the contention of the Furnace Company that said wall was constructed upon the line which had been acquiesced in and recognized for many years by the owners of the two tracts as the dividing line between them. The Furnace Company further relies upon estoppel. Upon trial, the court, basing his finding upon a survey made for plaintiff a few weeks before the commencement of this action, found that the boundary line between the properties of the plaintiff and of the Furnace Company is two feet, six inches, west of the east wall of the Furnace Company building at the southeast corner thereof, and 1 foot, 8½ inches, west of said wall at the northeast corner of said building, and that the boundary line between the two properties is one corresponding therewith, and quieted the title in the plaintiff to said strip occupied by the building of the Furnace Company, and ordered the removal within ninety days from the date of the decree, of that portion of the building found to encroach upon said strip. From this judgment and decree, the defendants have appealed.

■ It is the contention of the Furnace Company that the east foundation wall and the brick wall erected thereon were constructed upon the line, or a few inches to the west of a fence which had been constructed years before, which fence line for more than ten years had been acquiesced in and recognized by the owners of the two tracts as the division line between them. It is the settled law of this state that a line between adjoining tracts, definitely marked by a fence which has been acquiesced in and recognized by the owners of the tracts as the division line for more than ten years, becomes, as between the parties, the true line between said tracts, although a subsequent survey may show otherwise, and although neither of the parties intended to claim more than his deed calls for. A multitude of authorities could be cited on this proposition, but see Bradley v. Burkhart, 139 Iowa 323; Miller v. Mills County, 111 Iowa 654; Norton v. Ferguson, 203 Iowa 317; Brown v. Bergman, 204 Iowa 1006; Stone v. Richardson, 206 Iowa 419; Sorensen v. Mosbacher, 210 Iowa 156; Kraft v. Tennigkcit, 210 Iowa 81. It becomes necessary at this point to consider the facts as shown by the record. It will be noted that the property of the plaintiff lies to the east of that of the Furnace Company. Both tracts were at one time owned by Edward Minear, son of the plaintiff, he having purchased the property now owned by his mother July 11, 1903. He built thereon a house in 1906 or 1907. On October 16, 1915, Edward Minear conveyed to his mother, the plaintiff in this action, by a warranty deed, real estate therein described as the East 55 feet of the West 114 feet of the East 174 feet of the West 2 acres, etc. On May 7, 1930, about two weeks before the commencement of this suit, Edward Minear executed unto his mother what is denominated in the record a correction deed, conveying thereby real estate by the same description as that contained in the deed obtained by him July 11, 1903. On October 17, 1904, Edward Minear obtained a deed for real estate described therein as follows: The West 57 feet of the East 174 feet of the West 2 acres of Lot 8, of the official plat of the South ½ of Section 1, Township 78, Range 24, now included in and forming a part of the City of Des Moines.

This is the property now owned by the Furnace Company. Edward Minear sold and conveyed this property to Carpenter on August 2, 1906, and the Furnace Company is the record

owner thereof by a regular chain of mesne conveyances. It will thus be observed that from October 17, 1904, until August 2, 1906, Edward Minear was the owner of both tracts of real estate herein involved. There is a discrepancy in the testimony between Edward Minear and Carpenter as to when the fence between the two tracts was erected, Minear claiming that the fence was erected before his purchase of the tract now owned by the Furnace Company, and Carpenter and his wife, disinterested witnesses, testifying for the defendants, claiming that it was afterwards. Carpenter testified that while Minear built the fence, he paid his share of the expense, and that he suggested to Minear to have the posts stand on the west side of the east line. The testimony of Minear is that, before the fence was constructed, he had a surveyor to give him the corners of the lot now owned by his mother, and that he placed the west fence on that line. There is other testimony in the record to the same effect. Therefore, it is established by the record that the fence, whenever erected, was placed on what was believed to be the true line between the two properties. The plaintiff, during her occupancy of the premises, recognized said fence as the line, and has never contended that her property extends west of said fence line. In her argument, she admits that the fence erected by the son Edward was on the line. It is clearly established by the record that said fence was erected as a partition fence and recognized by the owners of the two tracts and acquiesced in by them as the dividing line between the two tracts since the time of the erection of the fence, whether it was in 1903, 1904, or 1906. Under the authorities hereinbefore cited, this fence had become the true line as between the respective tracts when the erection of the building of the Furnace Company was begun in 1921.

The next question of importance is whether the Furnace Company, by the erection of its building, has encroached upon the property of the plaintiff to the east of said fence line. While the testimony of the plaintiff and that of her son, Dewey, and some testimony of lesser importance by other members of her family, is to the effect that the building was placed east of said fence line, yet the convincing testimony, as disclosed by the great preponderance thereof, is that the east wall of the building was located a few inches to the west of said old fence. One

of the witnesses for the defendant testified that the plaintiff told him "that she thought it was kind of foolish for Mr. Keith to build right on the line." This impeaching testimony, contradicting her testimony given on the trial, is undenied by her. The son Dewey is also impeached by a showing of contradictory statements, which is undenied by him. The engineer who made the survey upon which the court based his decree does not attempt to testify as to where the old fence was. The convincing testimony in the record is that the east wall of the building is on the old fence line, or a few inches to the west thereof. This evidence is given by the engineer, who saw the fence and staked off the building; by the man who made and put in the batter boards; by one who dug the trenches and helped pour the cement; and by other witnesses. There is testimony that, during the trial of this case, a trench was dug south of the southeast corner of the building, and that rotted posts, having the appearance of having been in the ground fifteen years, were found to be in line with the east wall of the Furnace Company's building. The testimony is lengthy, and to set it out *in extenso* would unduly extend the length of this opinion. It is sufficient to say that we are abidingly satisfied, after a careful reading and rereading of the record, that the east foundation wall and the brick wall erected thereon stand a few inches to the west of the old fence line, which had been acquiesced in and recognized by the respective owners of the tracts of real estate as the dividing line for more than fifteen years before the building was erected.

██ Our pronouncement thus far is sufficient to determine the rights of the respective parties, but the appellants also rely upon estoppel. This building was erected in 1921 and 1922, but this action was not begun until after the correction deed was executed by plaintiff's son, and after she had procured a survey to be made, in May, 1930. The plaintiff lived on her premises. She saw the building in the course of erection upon the foundation. She knew that the Furnace Company believed, or assumed, that they were not encroaching upon her property. She permitted the building to be erected at a great expense, and after a lapse of more than eight years brings this action. She remained silent when she should have spoken. The superintendent of the Construction Company testified, in substance,

that, when he began work upon the building, the plaintiff showed him a stake which she claimed to be upon the line and which stood on the line with the footings south of the southeast corner of the foundation. This testimony is not denied by her. Under such circumstances, the defendant is entitled to invoke, as against the plaintiff, the doctrine of estoppel. See Herrick v. Moore, 185 Iowa 828; Helwig, Admr. v. Fogelsong, 166 Iowa 715; Leifheit v. Neylon, 139 Iowa 32; Olmstead v. Taylor, 177 Iowa 186; Seberg v. Iowa Trust & Savings Bank, 141 Iowa 99; Ross v. Ferree, 95 Iowa 604. As said in Herrick v. Moore, 185 Iowa 828, 832:

"The theory of estoppel is that, where one has invaded the right of another, thinking he is within his own right, and that invasion is known to the other, and the other stands by and sees him make valuable improvements upon the invaded territory, under the supposition that it is a part of the possessions of the invader, equity will thereafter deny to the invaded the right to object to the invasion, and will not grant his prayer to have the improvements destroyed or removed, when such act would be greatly to the prejudice of the invader. This estoppel comes pretty near to the rule of adverse possession, though, by its application, one may be estopped though the ten years essential to adverse possession have not expired."

In Helwig v. Fogelsong, 166 Iowa 715, we held that a fraudulent intent is not essential to an estoppel, but that it is enough if a fraudulent result would follow even from the silence of a party whose duty it was to speak, and who, having an opportunity to speak and knowing the circumstances, failed to do so. We there said:

"Estoppel may arise from silence, as well as words, where there is a duty to speak, and the party on whom the duty rests has an opportunity to speak, and, knowing the circumstances, keeps silent."

We deem it unnecessary to further comment upon the authorities. The record is convincing that the east foundation wall and the brick wall erected thereon are a few inches to the west of where the fence was when the building was staked off, and that said fence line constituted the line by reason of ac-

quiescence and recognition for a period of more than ten years. Moreover, even if this were not true, the record shows abundant evidence of estoppel as against the plaintiff for the claim which she is now making.

It is claimed by the plaintiff that the window ledges extend outward a distance of two or three inches from the perpendicular wall. From a careful reading of the record, we fail to find that any portion thereof extends beyond the line.

One more thing requires our attention. The windows along the east side of the building are so constructed that they open outward. When open, they necessarily open over the property of the plaintiff. The Furnace Company maintains, as a part of the building, box screens over the windows, which extend east of the building a distance of some fourteen or sixteen inches. It is apparent that the use of the windows and of the box screens constitutes a trespass upon the rights of the plaintiff to her property, and while the damage because thereof seems at this time to be merely nominal, yet the use thereof is derogatory to her rights in her property. How far the rights of the plaintiff to her property extend above the surface of the ground, we need not determine. It is sufficient for the purposes of this case to say that the use of the windows as constructed, and the maintenance of the box screens by the Furnace Company, constitute a trespass upon, and interference with, the rights of the plaintiff to her property. See Carpenter v. Kruidenier, 193 Iowa 390. The Furnace Company will be given a period of ninety days, after issuance of procedendo, in which to make a modification as to the box screens and windows so as to prevent further trespass by reason of the use of the same. Only in this slight respect is there any merit in appellee's contention. The judgment and decree of the trial court will be modified accordingly.

One fourth of the costs of the appeal in the case which we have heretofore considered, will be taxed to the appellants, and three fourths of same will be taxed to the appellee.

Because of our holding on the merits of the main case, the appeal of the defendants from the action of the court in dismissing their petition for a new trial becomes inconsequential, except as to the matter of costs. The trial court was of the opinion that the newly discovered evidence was only cumulative

or impeaching, and that the appellants had not shown due diligence in the discovery of the same. As to this, we agree with the trial court. The newly discovered evidence could not change the result. Therefore, the judgment of the trial court in dismissing the petition for a new trial is hereby affirmed, and the costs of said appeal are hereby taxed to the appellants.—Modified as to the first case; affirmed as to the second case.

FAVILLE, C. J., and EVANS, STEVENS, DE GRAFF, ALBERT, MORLING, KINDIG, and GRIMM, JJ., concur.